STATE, Respondent, v. SCHNEIDEWIND, Appellant.

*No. State 20.   Argued April 2, 1970.—Decided May 1, 1970.*
(Also reported in 176 N. W. 2d 303.)

For the appellant there was a brief and oral argument by *Percy L. Julian, Jr.,* of Madison.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   Schneidewind assigns as errors the denial of his constitutional right to equal protection of the law because of the refusal of the trial court to furnish his counsel a free copy of the transcript of the preliminary hearing; the admission of his confession in evidence because of the failure to give a *Miranda* warning; [1] the admission in evidence of an inculpatory statement because of the lack of a *Miranda* warning and because the admission was tainted by an illegal confrontation; and lastly, it is contended the evidence is insufficient to sustain the conviction.

### *Free transcript.*

A preliminary hearing was held and Schneidewind was bound over for trial.  Thereafter, counsel moved the trial

[1] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

court for a state-paid copy of the transcript which was denied on the ground the original transcript was on file and liberal rules of the court permitted it to be loaned to counsel for his use. Testimony at preliminary hearings must be written by the magistrate or under his direction, sec. 954.11, Stats. By sec. 256.57 (5), every reporter upon the request of any party to a criminal action or proceedings shall make a typewritten transcript and may charge therefor the fee therein set forth. This statute is applicable to preliminary hearings.

A similar New York statute requiring a magistrate or his clerk upon demand to furnish a defendant a copy of the transcript of a preliminary hearing upon payment of certain fees was held to be in violation of an indigent's right to equal protection and to access to a transcript of his preliminary hearing if denied because of his inability to pay therefor. *People v. Montgomery* (1966), 18 N. Y. 2d 993, 224 N. E. 2d 730. In ordering a free copy of the transcript for an indigent the court reasoned that when a state constitutionally or statutorily affords a defendant a right, the exercise thereof cannot be conditioned upon the defendant's ability to pay. This decision was referred to in *Roberts v. La Vallee* (1967), 389 U. S. 40, 88 Sup. Ct. 194, 19 L. Ed. 2d 41, when the supreme court held the New York statute resulted in a difference in access to instruments needed to vindicate legal rights and was based upon the defendant's financial situation and was therefore contrary to the equal protection clause of the fourteenth amendment. The rationale of these cases is not confined to what is absolutely necessary in the exercise of a constitutional right because the court in *La Vallee* reiterated the statement first made in *Smith v. Bennett* (1961), 365 U. S. 708, 709, 81 Sup. Ct. 895, 6 L. Ed. 2d 39, that "to interpose any financial consideration between an indigent prisoner of the state and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the

laws." In *Bennett* the indigent was unable to pay a $4 filing fee and thus his right to appeal was denied.

The precise question here was not decided in those cases, namely, whether the reasonable access to the use of the original transcript satisfies the calls of the constitution. Counsel for Schneidewind argues that a rich man's counsel may have his private copy to use as he desires in the preparation of the defense and therefore appointed counsel for an indigent should have his personal copy. Beyond this, counsel argues his work habits in preparing for trial requires a copy of the transcript because he cuts it up into sections and classifies them on the basis of a particular point of law or particular witnesses and he frequently makes marks on the margins of the transcript. This method of working obviously could not be indulged in when using the original transcript.

We point out this argument is not based directly on *Griffin v. Illinois* (1956), 351 U. S. 12, 76 Sup. Ct. 585, 100 L. Ed. 891, and the subsequent cases [2] although they are cited by the defendant for an analogy. The question here involves not the right to appeal or a transcript necessary for an appeal but rather a copy of a transcript as an instrumentality which is claimed to be needed by the indigent in defending himself as a rich man might do. The cases speak about "the differences in access" to these instruments but we read this to mean not insignificant differences of access to both rich and poor but access to the one and no access of any kind to the other.

[2] *Draper v. Washington* (1963), 372 U. S. 487, 83 Sup. Ct. 774, 9 L. Ed. 2d 899; *Long v. District Court of Iowa* (1966), 385 U. S. 192, 87 Sup. Ct. 362, 17 L. Ed. 2d 290; *Smith v. Bennett* (1961), 365 U. S. 708, 81 Sup. Ct. 895, 6 L. Ed. 2d 39; *Williams v. Oklahoma City* (1969), 395 U. S. 458, 89 Sup. Ct. 1818, 23 L. Ed. 2d 440.

We think counsel is not entitled to a free copy of the transcript of a preliminary hearing when there is an original transcript reasonably available to him for use. Here, the original was on file in court and available for use on a loan basis for almost four months before trial. We conclude this to be reasonable access. The trial counsel was also counsel at the preliminary examination and he could have made notes. In both *Montgomery* and *La Vallee* neither an original nor a copy was available to the indigent and the question of whether the availability of an original transcript was a reasonable substitute for the possession of a personal copy was not considered.

We do not understand the equal protection clause of the fourteenth amendment to the constitution to require that every indigent must have exactly the same instrumentality for use in the preparation of his defense that a rich man has. If this reasoning were applied to other constitutional guarantees this court would have to appoint only the most expensive and expert criminal lawyer to represent each indigent accused because a rich man could hire such a lawyer. It might even be argued this court ought to appoint two lawyers for every indigent because a man of means could hire two lawyers to defend him.

We think the constitutional requirement in this instance is met by making reasonably available the original transcript of the preliminary hearing. The marking and cutting up of a transcript of a preliminary hearing seems to us to go more to convenience than to a reasonable necessity for a client's protection. If in cases the original transcript is not available on loan, then an indigent accused is entitled to a free copy of such transcript or if a transcript is not ordered by the court the indigent is entitled to at least those parts which are necessary for him to prepare his defense, such as the testimony of all witnesses against him. Such testimony is useful in making motions and for impeachment at the trial.

*Admissibility of evidence.*

Prior to the commencement of the trial the court conducted a hearing to determine whether Schneidewind had been afforded the procedural protections contemplated by *Miranda v. Arizona, supra.* The court found he had been given the *Miranda* warning and at the trial his confession and certain statements made by him were admitted in evidence.

The facts upon which this issue turns are quite simple. The check in question was cashed on July 4 or 5, 1968, and Schneidewind was arrested at his home on July 18th. The detective who arrested him testified that he advised Schneidewind of his constitutional rights at the time of his arrest and thereafter took him to the police station in a squad car. On the way the detective stopped at the Martin Oil Service Station in Madison where the check had been cashed. The station manager without being asked any questions walked up to the police car, pointed to Schneidewind and stated he was the one who had cashed the forged check at the station. Schneidewind reacted by responding in effect that he had cashed the check at the station but had not prepared it. After arriving at the police station Schneidewind was taken to an interrogation room and given a form which set forth the *Miranda* rights. He was asked to read it and subsequently the warning was read to him and he signed the waiver form. He was interrogated and during the interrogation he wrote out answers to some general background questions and that he had told Detective Holtzman that he had cashed the forged check and split the proceeds with two other persons and had endorsed the name "Carl Thompson" on the back of the check. The defendant claimed no *Miranda* warning was given him at his home and at the police station he did not understand what was read to him. The trial court believed the officer and not the defendant. We cannot say the trial court was in error. Credibility is for the trier of the fact.

But it is argued that an adequate *Miranda* warning could not have been given at the time of the arrest because the detective at the preliminary hearing could not adequately state the *Miranda* rights. It is true, the officer stated that the court may appoint an attorney for an indigent rather than the court would appoint one, but reading the warning *in toto* and in light of the defendant's past experience in such matters, we conclude that under the circumstances the *Miranda* advice given by the officer was sufficient and adequate.

However, there arises the question of the voluntariness of the confession and the admission which the defendant argues in the "totality of the circumstances" cannot be considered voluntary. Courts must look to the "totality of the circumstances" in determining whether a confession or admission can be called voluntary. A court must examine such factors as the age of the accused, *Haley v. Ohio* (1948), 332 U. S. 596, 68 Sup. Ct. 302, 92 L. Ed. 224; the education and intelligence of the accused, *Townsend v. Sain* (1963), 372 U. S. 293, 83 Sup. Ct. 745, 9 L. Ed. 2d 770; the conditions under which the interrogation took place, *Fay v. Noia* (1963), 372 U. S. 391, 83 Sup. Ct. 822, 9 L. Ed. 2d 837; the physical and mental condition of the accused, *Blackburn v. Alabama* (1960), 361 U. S. 199, 80 Sup. Ct. 274, 4 L. Ed. 2d 242; and any inducements, methods and stratagems which were used to persuade the accused to confess, *Lynumn v. Illinois* (1963), 372 U. S. 528, 83 Sup. Ct. 917, 9 L. Ed. 2d 922; and what the responses were to his requests for counsel, *Haynes v. Washington* (1963), 373 U. S. 503, 83 Sup. Ct. 1336, 10 L. Ed. 2d 513.

Schneidewind argues he had only a sixth grade education, that he had a nervous breakdown in the service and he was below average intelligence. He is unable to read well and to write correctly without some help in spelling; on the other hand, he is thirty-four years old, married, and has experience in being convicted of previous crimes. It is true he suffered a nervous breakdown and sometime

between 1955 and 1961 spent some time in Mendota State Hospital. However, there were no unusual conditions under which the defendant was interrogated at the police station and no inducements or threats used to persuade the accused to confess. The record shows that one week prior to his arrest he had also been questioned by the same detective about a forgery and on another occasion had been informed of his constitutional rights and had signed a waiver of his rights. We think the trial court was correct in finding the confession and admission voluntary. As the trial judge said, "I think this man is a lot more knowledgeable than he makes out to be."

While the admission of the defendant at the filling station when confronted by the owner of the filling station might be said to be unusual, we do not consider it to be a product of an unconstitutional confrontation. It is true that evidence obtained as a direct result of a violation of a constitutional right is inadmissible and the exclusionary rule applies to intangible evidence as well as tangible evidence, such as statements following an unlawful arrest or entry. Not only evidence obtained by the primary illegality is inadmissible but also derivative evidence if such evidence is obtained "by exploitation of that illegality." *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441. In confrontation cases, identification based upon an unconstitutional lineup is not only inadmissible but identification tainted by such an illegal lineup is inadmissible. *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

Here, however, the stop at the filling station did not result in an identification upon confrontation which was used either directly or derivatively at the trial. But it is argued the confrontation was illegal and Schneidewind's reaction to the accusation of the station manager was a product of it. For this proposition the defendant relies

upon *Rivers v. United States* (5th Cir. 1968), 400 Fed. 2d 935. *Rivers* extended the confrontation doctrine, as we read the case, from a police lineup to an identification by the victim in the field shortly after the commission of a crime where there was no emergency requiring immediate identification. We question whether the supreme court cases go as far as *Rivers.* We have recently stated our position in lineup cases involving identification. *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625; *Wright v. State* (1970), 46 Wis. 2d 75, 175 N. W. 2d 646, in which we held a defendant has a right to counsel at an accusatorial stage identification. We do not consider the rationale of *Rivers* applicable because the exclusionary rule applies to an identification and not to a voluntary remark made by the accused. In the cases of tainted evidence by exploitation of illegality, the evidence was not the product or the result of a voluntary act of the accused but in spite of him. We have no more here than a voluntary statement made after a *Miranda* warning. What motivated Schneidewind to make the statement is immaterial since he knowingly and voluntarily made it. The confrontation did not cause or force the defendant to make the statement. It was only the occasion.

The last alleged error relates to the sufficiency of the evidence. This was a jury trial and counsel for Schneidewind made a motion after verdict consisting of some 19 grounds why there should be a new trial. Only one could possibly be considered as alleging insufficiency of the evidence and it does not particularize but merely states a conclusion that the verdict cannot stand on all the credible evidence. This is not a sufficient statement of the grounds. Besides the insufficiency of the evidence was not argued in the trial court. Recently in *State v. Escobedo* (1969), 44 Wis. 2d 85, 93, 170 N. W. 2d 709, this court took great pains in re-examining the need of a motion for a new trial after verdict in a jury trial as the basis for this court's consideration of questions on

appeal. In *State v. Van Beek* (1966), 31 Wis. 2d 51, 141 N. W. 2d 873, we stated we would decline to review issues unless the trial court was given the opportunity to examine them. Thus this court will not normally review questions not properly raised and preserved in the trial court. We may exercise our discretion in the interest of justice and may do so where errors are patently prejudicial or of constitutional dimensions. But here all that is raised is the sufficiency of the evidence and collaterally the point that no criminal offense was committed by Schneidewind because he only filled out the amount of the check and endorsed it, not knowing the check was forged. He was not charged with forgery but with cashing a check he knew was false or forged. Apparently he did not think this was a crime. His lack of intent cannot be taken seriously when he split the proceeds with a person who gave him the check and whom he knew cashed similar checks. Questions of intention and the insufficiency of the evidence are matters to be tried at the trial level; not having been preserved there, this court will not review such issues.

*By the Court.*—Judgment affirmed.