STATE, Respondent, v. HARPER, Appellant.

*No. State 33. Argued January 31, 1973.—Decided March 13, 1973.*
(Also reported in 205 N. W. 2d 1.)

544

For the appellant there were briefs by *Charles M. Constantine* and *Konnak, Constantine & Krohn,* all of Racine, and oral argument by *Charles M. Constantine.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   Harper raises three questions on this appeal: (1) Whether it was error to allow Mr. Schultz to identify him at the trial, (2) whether Harper reserved his right to have suppressed as evidence the jewelry seized in Chicago; and (3) whether Harper received effective assistance of counsel.

Harper was required to stand in a lineup in a Chicago police station in which Mr. Schultz identified him. Prior to trial, the trial court held a hearing and found that although the lineup was not suggestive, it was illegal because Harper had been denied the right to presence of counsel; therefore, the lineup identification could not be used at trial. However, the court ruled that Schultz could make an in-court identification. Harper now claims this latter ruling was error because the in-court identification was the result of an exploitation of illegality and tainted by a violation of due process of law. On motions after verdict, the trial court reaffirmed its ruling on the in-court identification.

In *State v. Brown* (1971), 50 Wis. 2d 565, at 569, 185 N. W. 2d 323, this court explained the test for in-court identification as follows:

"The law is clear that an in-court identification must not be the result of an exploitation of illegality or tainted

by a violation of due process of law. In the trilogy of lineup cases, *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178; and *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, the supreme court followed the test laid down in *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441, in determining the admissibility of in-court identifications following an illegal lineup or illegal confession. The *Wong* test is simply whether the evidence is acquired as the result of exploitation of illegality instead of by means sufficiently distinguishable and independent to be purged of any primary or prior taint of illegality. *See State v. Schneidewind* (1970), 47 Wis. 2d 110, 118, 176 N. W. 2d 303. Consequently, although there may be an illegal out-of-court identification, if the in-court identification can stand independently of such an out-of-court identification, it is admissible."

In *Jones v. State* (1970), 47 Wis. 2d 642, 178 N. W. 2d 42, and *State v. Schneidewind, supra,* we stated, relying on *United States v. Wade, supra,* and *Gilbert v. California, supra,* that certain factors should be considered by the court in determining whether the out-of-court identification impermissively tainted or influenced the in-court identification. Among these factors are the prior opportunity to observe the alleged defendant during the criminal act, any discrepancy between the pretrial description and the defendant's actual description, the identification of the defendant by picture prior to lineup, the failure to identify the defendant on prior occasions, and the lapse of time between the alleged act and the lineup identification.

Here, Schultz saw his assailant for two or three minutes. He directly faced Schultz in the store with a gun in his hand. The blow on the head by the other assailant did not affect Schultz' memory. Schultz identified Harper in the lineup, which was not suggestive. It is quite true, between the time of the robbery and the

lineup Schultz viewed mug shots in the police station and did not identify Harper. It is assumed, although the record does not so state, that a mug shot of Harper was among the photographs viewed. No definite description was given to the police by Schultz. It is also true that while in Chicago accompanied by a detective, Schultz went into a courtroom and did not identify Harper who was seated therein with other defendants, awaiting a hearing on bail. We do not rely heavily on the fact Schultz did not recognize the mug shots. The failure to identify by means of such photos is negative testimony and assumes the mug shots bore a reasonable resemblance to the photographed person at the time of the commission of the crime. Nor do we think it is controlling that Schultz did not recognize Harper in the courtroom in Chicago. He had no reason to examine the persons in the courtroom to see if he could identify them. It would, of course, be significant if Schultz had recognized Harper by photos or in the courtroom; but, the failure to do so does not carry the same contrary weight.

When asked the basis for his lineup identification of Harper, Schultz said he had seen "the gentleman face to face in my store while he was holding a gun to my face and it was the same man that was standing in that lineup." It is quite true the identification in the lineup did fix the identification more firmly in Schultz' mind, but this is not impermissive, if the lineup identification was not suggestive. While the lineup was illegal, the illegality was such that it had no effect upon the identification. From this record, we cannot say the in-court identification came about by an exploitation of an unfair lineup or in the language of *Simmons v. United States* (1968), 390 U. S. 377, 384, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247, that the lineup was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The basis of Schultz' iden-

tification was "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra,* and *United States v. Wade, supra.*

As the law then stood, the search of Harper's car by the Chicago police, after he had been stopped and was unable to produce a driver's license, was illegal. The search revealed ammunition, 21 Wisconsin-license-plate-validation stickers and jewelry bearing the tags of Schultz Jewelry of Racine. Jay Schwartz, as trial counsel, did not prior to trial move for the suppression of this evidence, mostly because his preparation of the case was such he was unaware of its existence. He did discover it during the second day of trial and prepared a motion for suppression. While such a motion under sec. 971.31 (2), Stats., should be made prior to trial, it may also be made during trial at the discretion of the court. Instead of making the motion, counsel worked out a stipulation with the district attorney, and joined in by Harper, to admit the jewelry into evidence but to exclude the ammunition and the validation stickers. Harper claims this waiver of the right to have the jewelry suppressed is not binding upon him because he did not understand the effect of the stipulation and expressed an objection to his attorney when the stipulation was read to the jury and the jewelry was received in evidence. He also claims the waiver is not binding because the stipulation cannot be explained or justified as an act of competent counsel constituting a deliberate trial strategy or technique and part of an overall trial plan. In determining this issue, we omit any consideration of the somewhat overlapping issue of competency of counsel, later discussed.

Waiver of a constitutional right has been traditionally defined as an intentional relinquishment of a known right. *See Johnson v. Zerbst* (1938), 304 U. S. 458, 464, 58 Sup. Ct. 1019, 82 L. Ed. 1461; *State v. Beals* (1971),

52 Wis. 2d 599, 191 N. W. 2d 221. Here, Harper claims he did not realize his entering into the stipulation would waive his right to have the jewelry suppressed if found to be the fruit of an illegal search. However, the record clearly shows that at the time of the hearing before the judge outside the presence of the jury he understood the stipulation, agreed to it, and even agreed to a correction. His present claim that he did not understand that the stipulation would be read to the jury is insufficient.

Assuming Harper did not knowingly enter into the stipulation, there is raised the important question of when an attorney may waive a constitutional right of his client. It is perfectly obvious that if during trial a client must be consulted on every possible waiver, the trial could not expeditiously proceed; constant interruption caused by attempts to explain technical and professional reasons to a lay person would prevent such a result. In *Henry v. Mississippi* (1965), 379 U. S. 443, 85 Sup. Ct. 564, 13 L. Ed. 2d 408, the United States Supreme Court held a constitutional right may be waived by counsel's deliberate choice of strategy even without consultation with his client. This court in *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753, certiorari denied, 384 U. S. 1017, 86 Sup. Ct. 1941, 16 L. Ed. 2d 1039, applied the *Henry* rule to a situation where as a part of the strategy counsel made no objection to the introduction of the defendant's admissions into evidence. In *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295, the rule was applied to a situation where counsel chose to utilize an existing guilty plea, rather than to attempt to withdraw it, in hopes of obtaining leniency on sentencing. In *State v. McDonald* (1971), 50 Wis. 2d 534, 184 N. W. 2d 886, wherein counsel elected to refrain from moving to suppress lineup evidence, we stated, at page 539, "While the defendant should be consulted concerning pleas of guilty and the general defense of his case,

he need not be consulted in every detail. The accused has no more right to control his attorney and the conduct of the trial than he has to dictate to his surgeon how to perform the operation." In addition to the required consultation with a client and his consent regarding a plea of guilty, trial counsel cannot, without his client's express consent, waive the right to a jury trial or require his client to take the stand in his own behalf. But not every objection of a client to his counsel during the course of trial as to conduct of the defense is effective to vitiate what would otherwise be a tactical waiver. Such an objection is only effective within the area of and in reference to those matters in which the ultimate decision is reserved to the client.

In *State v. Beals, supra,* the action of counsel in forsaking his client in a lineup to protest the manner in which it was conducted was held not to be a trial tactic, binding upon the client. Harper argues that, as in *Beals,* the stipulation cannot be justified as a trial strategy or tactic, but this part of his argument overlaps with that relating to competency of counsel. We think the stipulation was part of the trial strategy and correctly considered such by the trial court. Whether it was good strategy is beside the point; whether it was occasioned by the failure of trial counsel to prepare his case earlier is also beside the point on the issue of trial strategy or technique.

The last contention of Harper is that he was denied effective assistance of counsel. In *State v. Simmons,* ante, p. 285, 203 N. W. 2d 887, this court approved Standard, sec. 8.6, of the American Bar Association Project on Standards For Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft, 1971), p. 307, and suggested an evidentiary inquiry should be held on the effective-

ness of prior counsel.[1] In this case after the verdict, counsel appointed on appeal moved for a new trial on the ground of ineffectiveness of trial counsel and had a hearing on the issue before the trial court. At the hearing trial counsel testified and explained his representation of Harper. The trial court found Mr. Jay Schwartz to have given competent representation. The trial court stated:

"Mr. Schwartz conducted a very vigorous defense in behalf of Mr. Harper. He conducted a strenuous cross-examination of all witnesses and demonstrated a good background of the matter which would be necessary for such cross-examination. The court knows the clients want a great deal of time to be in contact with their attorney and this is only natural, but time spent with clients is dependent upon the quality and not the quantity.

"Mr. Schwartz is an able and experienced trial lawyer, especially in the criminal field. And he can get to the nuts and bolts of a case, so to speak, very quickly, and to get to relevant matters in an expedient manner. He was successful in prevailing in the *Wade* hearing, and having the testimony of the lineup excluded. During his cross-examination he brought out points that would only be known to the defendant, and in some way that matter was given to Mr. Schwartz by the defendant."

This court has held for some time that a new trial will not be granted upon the ground of inadequate representation unless counsel's performance is "so inadequate and of such low competency as to amount to no representation." *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625; *Quinn v. State* (1972), 53 Wis. 2d 821, 193 N. W. 2d 665; *Swonger v. State* (1972), 54 Wis. 2d 468, 195 N. W. 2d 598. The test is whether the

---

[1] "8.6 Challenges to the effectiveness of counsel. . . .

"(c) A lawyer whose conduct of a criminal case is drawn into question is entitled to testify concerning the matters charged and is not precluded from disclosing the truth concerning the accusation, even though this involves revealing matters which were given in confidence."

representation is "so inadequate as to amount to no counsel at all and to reduce the trial to a sham and a mockery of justice." *Flowers v. State* (1969), 43 Wis. 2d 352, 365, 168 N. W. 2d 843; *State v. Cathey* (1966), 32 Wis. 2d 79, 86, 145 N. W. 2d 100. Thus, this court has held that effective assistance of counsel was not denied where the attorney failed to serve a notice of alibi, *State ex rel. Simos v. Burke* (1968), 41 Wis. 2d 129, 163 N. W. 2d 177, or failed to make any motions whatsoever, *Quinn v. State, supra,* or failed to object to the conduct of the trial, *Flowers v. State, supra,* or failed to object to evidence, *State v. Simmons, supra.* Under this test, it is clear that Harper cannot succeed in his argument that he received ineffective assistance of counsel.

In view of the recent American Bar Association Project on Standards For Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function,* this test may be too lenient. It is contended the representation of Harper was deficient as judged by the standards in a number of respects. First, it is pointed out that trial counsel did not interview his client before trial to determine all relevant facts known to Harper, contrary to ABA Standard, p. 204, sec. 3.2 (a).[2] The trial counsel stated it was his custom not to interview his client until shortly before the trial as he found this to be a more expeditious way of working. This method of preparing a case may work in isolated instances, but we think the sooner a case is prepared by counsel the greater his chance of success. As stated in the Commentary to the Standard at pages 204, 205, "An adequate defense cannot be framed if the lawyer does

---

[2] "3.2 **Interviewing the client.**

"(a) As soon as practicable the lawyer should seek to determine all relevant facts known to the accused. In so doing, the lawyer should probe for all legally relevant information without seeking to influence the direction of the client's responses."

not know what is likely to develop at trial. He needs to know essential facts including the events surrounding the act charged, information concerning the defendant's background and his record of prior convictions, if any. In criminal litigation, as in other matters, information is the key guide to decisions and action. The lawyer who is ignorant of the facts of the case incapacitates himself to serve his client effectively."

It is also contended counsel made no independent investigation of the case and did not in advance of trial inspect police reports available to him, contrary to the ABA Standard, pp. 225, 226, sec. 4.1.[3] Trial counsel said he did not inspect police reports prior to trial because in prior cases where he had done so, he had been misled in relying upon them.[4] But the inspection of such reports does not require counsel to rely on them. An effective representation consists of much more than performing the advocate's function in the courtroom. An adequate investigation may avoid any courtroom confrontation. The trial court thought trial counsel adequately performed in the courtroom and his representation was such that he must have made an investigation and proper preparation. Of course, the relationship of effective investigation by a lawyer to competent representation at trial is obvious, for without adequate investigation he is not in a position to make the best use of such mecha-

[3] "**4.1 Duty to investigate.**

"It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty."

[4] Sec. 971.23, Stats., now allows limited discovery and inspection before trial and sub. (7) provides a continuing duty to disclose. *See also Wold v. State,* ante, p. 344, 204 N. W. 2d 482.

nisms as cross-examination, impeachment, and pretrial motions, or to effectively conduct plea discussions and enter into other stipulations. Although it is argued the courtroom technique of trial counsel would have been improved had more adequate investigation been made, the trial court found the preparation as evinced by his courtroom conduct to be sufficient.

It is also claimed trial counsel failed to move for a change of venue although his client requested him to do so. There seems to be some conflict between ABA Standards, pp. 216, 217, sec. 3.6,[5] which admonishes counsel to move promptly for a change of venue when he can do so in good faith, and pp. 237, 238, sec. 5.2,[6] which

[5] "**3.6 Prompt action to protect the accused.**

"(a) Many important rights of the accused can be protected and preserved only by prompt legal action. The lawyer should inform the accused of his rights forthwith and take all necessary action to vindicate such rights. He should consider all procedural steps which in good faith may be taken, including, for example, motions seeking pretrial release of the accused, obtaining psychiatric examination of the accused when a need appears, moving for a change of venue or continuance, moving to suppress illegally obtained evidence, moving for severance from jointly charged defendants, or seeking dismissal of the charges.

"(b) A lawyer should not act as surety on a bail bond either for the accused or others."

[6] "**5.2 Control and direction of the case.**

"(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf.

"(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

"(c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer

appears to reserve the decision as to change of venue for counsel. It is argued that in view of Harper's history in Racine county and adverse publicity resulting from former felony trials in Kenosha, such a motion should have been made. Trial counsel claims the motion was not made prior to trial because he did not think the proof at that point to be strong enough; instead, he attempted to find the requisite prejudice in *voir dire* of the jury. Having found a jury with which he was satisfied, he saw no reason for making such a motion.

It is pointed out that contrary to ABA Standard 3.6, counsel failed to make a timely presentation of an alibi notice. It is claimed as a result no witnesses were allowed to be called and Harper's testimony as to his whereabouts was limited to one-half hour before the time of the robbery; that had the notice of alibi been presented earlier, more alibi witnesses might have been found and subpoenaed, and that evidence could have been produced showing Harper's presence in Milwaukee at the time of the crime. These alleged shortcomings, viewed cumulatively, it is argued, prejudiciously affected the trial of the case. Part of the questioned activity of counsel is ascribed to his opinion that the role of appointed counsel was somewhat different than that of retained counsel. Of course, the obligation of appointed counsel and retained counsel is identical. An appointed counsel cannot and should not rely upon the court for the protection of the accused. ABA Standard, pp. 222, 223, sec. 3.9.[7]

should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation."

[7] "3.9 **Obligations to client and duty to court.**

"Once a lawyer has undertaken the representation of an accused his duties and obligations are the same whether he is privately retained, appointed by the court, or serving in a legal aid or defender system."

As previously noted, trial counsel did not make a timely motion or any motion to suppress the evidence found in the trunk of Harper's car by the Chicago police. ABA Standard, sec. 3.6, requires the moving to suppress illegally obtained evidence prior to trial. Harper claims the failure to make such a motion was caused by a lack of prior preparation and knowledge of the illegal search until after the trial started, at which time trial counsel was hard pressed for an opportunity to study the law he regarded applicable to the suppression of evidence; therefore, as a result, he made the best of a bad situation by entering into a stipulation which provided for the admission of evidence which might otherwise have been suppressed. This argument, of course, is based on hindsight or what might have been. It overlooks the fact that Harper claimed to have an alibi and to have purchased the seized jewelry from an unknown person at a nightclub. At the trial both of these defenses were in effect put in evidence, although because of failure to serve a notice of alibi, evidence as to the whereabouts of Harper was restricted to one-half hour prior to the alleged crime.

Lastly, it is argued that if trial counsel had moved in advance of trial to suppress the Chicago lineup identification of Harper by Mr. Schultz, as suggested by Standard 3.6, he might have taken a different view about the reception of the jewelry in evidence. This argument stands on the same footing as counsel's failure to make a timely motion for the suppression of evidence.

We must point out that appellate counsel, who was under a duty to raise all these objections in the interest of his client, is to be commended for undertaking the most difficult task of raising the question of incompetency against a colleague. Nevertheless, this court is satisfied the trial court was correct in its determination that the representation by trial counsel was not below the standards of effectiveness. In considering alleged

incompetency of counsel, one should not by hindsight reconstruct the ideal defense. The test of effectiveness is much broader and an accused is not entitled to the ideal, perfect defense or the best defense but only to one which under all the facts gives him reasonably effective representation. Some indication of the effectiveness is the fact the jury took five hours to make up its mind that Harper was guilty beyond a reasonable doubt.

We think it is time for this court to restate a higher test for competency of counsel for the future. This court has always been most solicitous of the right of one accused of crime to be properly and adequately represented by counsel. Effective representation is not to be equated, as some accused believe, with a not-guilty verdict. But the representation must be equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to clients who had privately retained his services. Just as an indigent is entitled to receive from a doctor or a dentist the same standard of professional care given to those able to pay for medical and dental services, so, too, is he entitled to the same standard of professional legal services from an attorney. We now approve the ABA Standards [8] cited in this opinion for future cases as partial guidelines to the determination of effective representation; we do not hold that a violation thereof automatically determines incompetency or ineffectiveness of the representation. While in this case the representation in the respects noted leaves something to be desired, we cannot hold under the *Pulaski* rule then applicable that Harper was deprived of effective assistance of counsel.

*By the Court.*—Judgment affirmed.

[8] Secs. 3.2, 3.6, 3.9, 4.1, and 5.2, of American Bar Association Project on Standards For Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft, 1971).

558

CONNOR T. HANSEN, J. *(concurring)*. I concur with
the result reached by the majority of the court. How-
ever, I respectfully dissent from that portion of the
majority opinion relating to the competency of counsel
and which adopts certain standards of the American
Bar Association Project on Standards for Criminal
Justice.

It is my opinion that the record in this case so con-
clusively demonstrates the defendant was, in fact, repre-
sented by competent counsel, that this is not an appropri-
ate case in which to reconsider the established test of
competency of counsel.

The majority opinion makes no reference to several
facts which I consider to be significant. The preliminary
examination was set for April 16, 1971, at which time
the defendant appeared with his counsel, Attorney
Schwartz. Counsel requested an adjournment to prepare
for the preliminary examination because of his recent
appointment. The matter was adjourned to May 21,
1971, by consent, at which time a preliminary examina-
tion was held. The defendant was bound over for trial
and a five-day jury trial, which resulted in defendant's
conviction, was commenced on September 9, 1971. A
female employee of the jewelry store was in the store at
the time the defendant entered. She testified that he was
armed with a gun; that she was ordered to open the
vault; and that the entire incident took approximately
twenty minutes. This witness made a positive identifica-
tion of the defendant, and it is not and never has been
challenged.

Also, I view the motion to suppress evidence differently
than the majority of the court and would consider the
method in which it was used to be a successful trial tactic.
An unsuccessful motion to suppress would have created
a situation in which other incriminating evidence found
in the defendant's car could have been introduced in evi-

dence. The strategy followed produced a situation where only the stolen jewelry, although highly incriminating evidence in itself, was all that was admitted into evidence. Neither this instance, nor any of the other instances of alleged incompetency of counsel, convince me that this case is the proper vehicle to rewrite the test for competency of counsel.

In any event, I do not concur with the test adopted by the majority of the court. The majority states the test to be as follows, "the representation must be equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to clients who had privately retained his services." It is my opinion that the adoption of such a standard presents an entirely impractical, if not impossible, test for the competency of counsel. The inference is that counsel provided for indigent defendants by the taxpayer is somehow less skilled or versed in criminal law than privately retained counsel. Stated conversely, the implication is that privately retained counsel would be more skilled and versed in criminal law than counsel provided by the public for indigent defendants. I know of no recognized basis for equating the skills of appointed or assigned counsel with those of privately retained counsel. I do not believe it is practical to attempt to make such a categorical comparison of legal skills. The majority opinion cites no authority to support the test which it adopts. I do not know of any, and do not believe it should be the test. To the best of my knowledge, it is not the test in any other jurisdiction.

It is my understanding that the right to counsel finds its basis in the sixth and fourteenth amendments to the United States Constitution. Essentially, these amendments prohibit the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right. This means that the de-

fendant should receive a fair trial with the assistance of effective or adequate counsel. As pointed out by the majority, "effective" and "adequate" counsel does not translate itself into a "not guilty" verdict. Neither does it translate itself into someone's judgment of a test based upon the abilities of privately retained counsel, skilled and versed in criminal law.

The standard of review on the issue of competency of counsel should go directly to whether the defendant received a "fair trial," not on the play of one counsel's ability against another. It seems to me the applicable standard is broadly stated in *Edwards v. United States* (D. C. Cir. 1958), 256 Fed. 2d 707, certiorari denied, 358 U. S. 847, 79 Sup. Ct. 74, 3 L. Ed. 2d 82. Criminal convictions will be upset as a result of trial counsel's ineptitude only in the most compelling cases.

". . . Mere improvident strategy, bad tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective assistance of counsel, unless taken as a whole the trial was a 'mockery of justice.' . . ." [1]

As stated in *Mitchell v. The People* (1952), 411 Ill. 407, 408, 104 N. E. 2d 285, certiorari denied, 343 U. S. 969, 72 Sup. Ct. 1065, 96 L. Ed. 1364:

". . . Any other rule would put a premium upon pretended incompetence of counsel; for, if the rule were otherwise, a lawyer with a desperate case would have only to neglect it in order to ensure reversal or vacation of the conviction."

I would not adopt the test for competency of counsel as set forth in the majority opinion.

Finally, the majority adopts five of the *Standards Relating to The Prosecution Function and The Defense Function* of the American Bar Association Project on Standards for Criminal Justice. In adopting these five

---

[1] *Edwards v. United States, supra,* page 708.

standards, the majority opinion acknowledges that "[t]here seems to be some conflict" between sec. 3.6 and sec. 5.2. No attempt is made to reconcile the two sections and I would not deem it appropriate to adopt the standards with an acknowledged conflict between them.

Furthermore, I have some reservation about adopting the standards at all. Presumably, it could be argued that the adoption of certain selected standards is comparable to the propounding of common law and the recognition of constitutional rights in judicial decisions. However, I would consider the adoption of the standards referred to by the majority in this case more akin to rules of the court and within the purview of sec. 251.18, Stats. 1971. Generally, they are standards that go directly to the conduct and duties of trial judges and trial counsel. This court has in the past sometimes "adopted" and sometimes "approved" these various standards by way of footnote, or in its opinions.[2] The lack of uniformity in the "adoption" or "approval" of the standards on a case-by-case method produces a situation where it is virtually impossible for trial judges and trial counsel to have them readily available.

I am authorized to state that Mr. Justice ROBERT W. HANSEN joins in this concurrence.

---

[2] *State v. Simpson* (1972), 56 Wis. 2d 27, 201 N. W. 2d 558.