KREBS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 291. Argued June 3, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 355.)

410

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The defendant has raised three issues on this appeal. They are: (1) Whether he was denied effective assistance of counsel, (2) whether he is entitled to a new trial in the interest of justice, and (3) whether the imposition of a sentence of five to twenty years was an abuse of discretion.

The principal contention of the defendant is that he was denied effective assistance of counsel.

This case was tried prior to *State v. Harper* (1973), 57 Wis. 2d 543, 557, 205 N. W. 2d 1, where this court stated:

"We think it is time for this court to restate a higher test for competency of counsel for the future. This court has always been most solicitous of the right of one accused of crime to be properly and adequately represented by counsel. Effective representation is not to be equated, as some accused believe, with a not-guilty verdict. But the representation must be equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to clients who had privately retained his services. Just as an indigent is entitled to receive from a doctor or a dentist the same standard of professional care given to those able to pay for medical and dental services, so, too, is he entitled to the same standard of professional legal services from an attorney. We now approve the ABA Standards cited in this opinion for future cases as partial guidelines to the determination of effective representation; we do not hold that a viola-

tion thereof automatically determines incompetency or ineffectiveness of the representation. . . ."

*Harper* is not retroactive and therefore the standards to be applied in judging the competency of counsel in this case are the pre-*Harper* standards. This court summarized those standards in *Harper,* saying at pages 551, 552:

"This court has held for some time that a new trial will not be granted upon the ground of inadequate representation unless counsel's performance is 'so inadequate and of such low competency as to amount to no representation.' *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625; *Quinn v. State* (1972), 53 Wis. 2d 821, 193 N. W. 2d 665; *Swonger v. State* (1972), 54 Wis. 2d 468, 195 N. W. 2d 598. The test is whether the representation is 'so inadequate as to amount to no counsel at all and to reduce the trial to a sham and a mockery of justice.' *Flowers v. State* (1969), 43 Wis. 2d 352, 365, 168 N. W. 2d 843; *State v. Cathey* (1966), 32 Wis. 2d 79, 86, 145 N. W. 2d 100. . . ."

Even if the representation of defendant's counsel was to be judged by the *Harper* standard we do not think the representation was ineffective.

To put this matter in its proper perspective, it should be noted that defense counsel was actually chosen and retained privately by the defendant and his father based in part at least upon their evaluation of him in representing them in prior legal matters. He was appointed by the court when it became apparent that the defendant qualified as an indigent.

Substantially the same arguments, if not identical, were made by the public defender before the trial court in the 974.06 postconviction motion. The trial court, in an excellent memorandum opinion, discussed this issue at length and denied the motion. ·

Because the memorandum opinion thoroughly and correctly decided the issue, we repeat it here.

"With regard to the question of competency of counsel the applicable test is stated in *Flowers v. State (1969), 43 Wis. 2d 352*, as follows:

" '. . . the test as we have said is whether the representation was so inadequate as to amount to no counsel at all and to reduce the trial to a sham and a mockery of justice. . .'

See also: *Pulaski v. State, 23 Wis. 2d 138; Quinn v. State, 53 Wis. 2d 821; Swonger v. State, 54 Wis. 2d 468.*

"This test will be used to examine defendant's claim that he was denied the effective assistance of counsel.

"It is first alleged that the representation of the defendant was constitutionally ineffective in that 'Counsel failed in any meaningful way to cross examine any prosecution witness.'

"Cross examination is, of course, a valuable trial tool designed to correct error, to elicit suppressed facts and to confound the perjurer. The right to cross examine witnesses has been said to be 'the strongest of all weapons in the arsenal of justice'. Floyd Paul Stryher, The Art of Advocacy, page 109.

"Albeit this is true, it is also true that cross examination without purpose is an exercise in futility. More often than not these cross examinations turn out to be pointless, repetitions and a waste of time. There should be a purpose for everything and whether to cross examine or not is no exception to this rule. From the text writers the following purposes to cross examination may be elicited.

"1. To show that a witness' testimony has been rehearsed or that he has been coached in his testimony.

"2. To show that a witness' testimony is improbable.

"3. To explain, qualify or supplement a witness' testimony.

"4. To impeach a witness by showing prior inconsistent statements.

"5. To compel the admission of contrary facts.

"6. To impeach a witness with evidence of a prior conviction (credibility).

"7. To weaken the effect of a witness' testimony by attacking his source and extent of knowledge.

"8. To test a witness' memory and to attempt to establish his inability to correctly recall and relate in a

consistent fashion the facts of which he is supposed to have knowledge.

"9. To attempt to elicit any bias or prejudice or any improper motive on the part of the witness.

"With these purposes for cross examination in mind I have read the transcript of testimony of the state's witnesses who were not cross examined by defendant's counsel. Leaving aside at this point the testimony of the witnesses Fletcher, Toler and Pierce, I am unable to see any useful purpose for the cross examination of any of the other State's witnesses. In each case the record shows that the witness appeared as a decent, unprejudiced citizen doing his duty to testify to such fact as was within his knowledge. In each case it appears the witness told the substantial truth and all witnesses tend to corroborate one another and in material respects they are corroborated by the testimony of the defendant and his witnesses. There is nothing in the testimony from which I can find that there was any probability that defendant's counsel could have gained by cross examination. He could not have destroyed the facts testified to or the witnesses who testified. Defendant's counsel did what any effective trial counsel should do. He smiled at the witness and said 'no questions'.

"It is next alleged that counsel was ineffective in that he 'failed to cross examine the State's primary witness, Kenneth Fletcher, and this precluded the jury from ascertaining the true facts relating to the events which led to the death of Randy Strain, and which further denied defendant the ability to demonstrate that the acts of the defendant were undertaken in self-defense and/or in the heat of passion.'

"With respect to the witness Fletcher if he were to be cross examined it should have been with some purpose in mind. He testified at both the preliminary examination and at the trial. At the time of preliminary examination he was in fact cross examined by defendant's counsel. There is nothing to demonstrate that had Fletcher been cross examined at the time of trial that his testimony could have been destroyed or that his credibility could have been impaired. In all material respects the facts testified to by him were corroborated by the defendant's written statement and by the testimony of the defendant and the defendant's father at the time of trial. While it

might be argued that Fletcher was a liar the defendant is in a poor position to argue that his testimony and that of his father is other than the unvarnished truth, i.e.: the 'true facts' of the case. The 'true facts' of the case do not support 'self-defense or heat of passion manslaughter'. The failure to cross examine Fletcher at the time of trial does not demonstrate ineffectiveness of counsel.

"It is next alleged that counsel was ineffective in that 'Counsel was unable to properly present defendant's asserted defense of self-defense; counsel apparently not knowing the proper manner in which to prove the elements of this offense (defense) and the proper sequence of proof.'

"This argument puts the 'cart before the horse'. Before a foundation can be made for the defense of self-defense the issue of alleged self-defense must be in the case. In the instant case the defendant's statement to the police, his testimony at the time of trial, all of which are corroborated in material respects by the testimony of the witness Fletcher and the defendant's father, negative the defense of self-defense. Wisconsin Statutes, *Section 939.48.*

"The defendant initiated the violence and never withdrew and at all times remained the aggressor. The failure of counsel to lay a foundation to establish a non-existent defense does not establish ineffective representation.

"It is next alleged that trial counsel was ineffective in that 'counsel did not understand the nature and procedure at the Goodchild hearing held herein and thus was not able and did not represent the defendant at all of said hearings.'

"After having been given his *'Miranda* warnings' the defendant gave a written statement to the police authorities. In addition to the written statement he made certain oral statements such as 'Good. I hope the son-of-a-bitch dies so I don't have to do it again', 'I've been planning to kill that bastard for over a year, ever since he raped my wife'. 'Good, the first thing I'm going to do when I get out of jail is ——— on his grave'.

"No *Miranda* question has been raised and it is undisputed that the defendant was given the *Miranda* warnings on several occasions, and that there was a knowing and

intelligent waiver of the *'Miranda* rights'. The purpose of a *'Goodchild* hearing' is to make a court determination as to whether or not a statement given as a result of custodial interrogation is voluntary as a matter of constitutional fact, i.e.: is it 'constitutionally antiseptic'. The direct testimony and cross examination of the witnesses, Toler and Pierce, suffice to establish a prima facie case of the voluntariness of the pre-trial, in custody interrogation. The defendant made no claim that the statements were the result of any duress, threats, coercion, trickery or promises, but rather that his answers were not complete or were incorrect. The failure of defendant's counsel to present countervailing evidence to the willingly given and voluntary statements when there is no reason to believe that such countervailing evidence exists in fact does not constitute ineffective representation of counsel.

"It is next alleged that 'Due to counsel's inability to put on a self-defense case, the defendant was denied his right to testify on his own behalf and present a viable defense.'

"Here again the testimony and statement of the defendant as corroborated by the other witnesses establishes the defendant as the aggressor in the incident that resulted in Randy Strain's death. Counsel cannot be found ineffective for failing to establish a non-existent defense.

"It is next alleged that trial counsel was ineffective in that 'Counsel failed to request a jury instruction relating to the lesser included offense of manslaughter in the heat of passion [sec. 940.05 (1), Stats.] although on the facts of this case a lesser included offense was obviously supported by the evidence inasmuch as the deceased had raped the defendant's wife prior to his death.'

"On the record the question of whether or not the defendant's wife was raped by the decedent is a matter of conjecture. At best it can be stated that the defendant may reasonably have believed that such was the fact. Even were it so, the rape occurred some one year and one half before this incident and the defendant had had knowledge of it for a period of several months. Had defendant's counsel requested the submission of Heat of Passion Manslaughter as a lesser included offense the court would have denied the request on the grounds that there was no reasonable view of the evidence that would

warrant the jury to find that the killing was without intent and while defendant was in the 'heat of passion'.

" 'The passion which renders the killing of a person voluntary manslaughter must have continued to exist until the commission of the homicidal act; if from any circumstances whatever it appears that the party reflected, deliberated or cooled any time before the fatal stroke was given or if in legal presumption there was time or opportunity for cooling, the killing will amount to murder, being attributable to malice and revenge, and not to mental disturbance. If such a period of time had passed after the provocation that a reasonable man would have cooled off so that reason would regain control, the defendant is guilty of murder and not manslaughter, without regard to whether in fact he did cool off.' [Wharton, *Criminal Law and Procedure*, Vol. I, Sec. 286 at page 601.]

"The objective test above cited is the law of this State. In *Zenou v. State*, 4 Wis. 2d 655, the Court defined Heat of Passion Manslaughter as follows: '. . . that which will constitute the "heat of passion" which will reduce what would otherwise be murder to manslaughter is such mental disturbance caused by reasonable, adequate provocation, as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man as to render his mind for the time being deaf to the voice of reason, make him incapable of forming and executing that distinct intent to take human life essential to murder in the first degree; and to cause him, uncontrollably, to act from impelling force of the disturbing cause rather than from any real wickedness of heart, cruelty or recklessness of disposition. . .' *See also Ameen v. State*, 51 Wis. 2d 175.

"Counsel cannot be found ineffective for failure to request submission of a lesser included offense for which there was no reasonable basis in the evidence.

"It is next alleged that trial counsel was ineffective in that he 'failed to adequately argue mitigation at the time of sentencing'.

"Sentence herein was imposed upon the judgment of conviction entered and based upon the jury's verdict. The jury chose to find the defendant guilty of Second Degree Murder. Had the Court been the trier of fact

in this matter the defendant would have been found guilty of First Degree Murder and would now be serving a term of life imprisonment. In the court's judgment the killing of Randy Strain was virtually an execution. Such being the court's view of the matter at the time of sentencing and now, it cannot be argued here that counsel's remarks were ineffective at the time sentence was imposed. I would suspect that the deceased brother-in-law would be happy to trade places with the defendant, were that possible.

"It is next alleged that counsel was ineffective in that 'Counsel failed to protect the defendant's post-conviction rights by filing any motions for a new trial or by pursuing his cursory post-conviction motion relating to the sentence here.'

"At the hearing on the post-conviction motion attorney Geffs made the point that he felt that the verdict obtained was a good one for the defendant in view of the case against him. He made the further point that he had concluded that to attempt to modify the sentence would be an exercise in futility and that the best way to proceed would be to ultimately seek some form of executive clemency. From past experiences with trial counsel the court knows that he reads the advance sheets and the court would assume that he also reads a daily newspaper. With this background his suggested manner of procedure is found most reasonable and effective. Trial counsel does not have the reputation of failing to make timely appeals from judgment and orders he may feel are erroneous or to review such matters by appropriate motion in the trial court.

"Finally it is alleged that trial 'counsel generally exhibited a lack of familiarity with criminal and trial procedure with the sequence of proof, with the proper method of introducing evidence, with the propriety of various pieces of evidence and testimony presented by the prosecution, and the proper manner of conduct in a criminal trial generally.'

"When trial counsel was called in on this case he was confronted with a situation wherein the defendant had initiated an altercation with the deceased brother-in-law in the presence of several witnesses. After having been disarmed of a hammer and wrench handle which were

used in the initial affray the defendant proceeded to arm himself with a loaded rifle and again set forth in pursuit of the decedent. While the deceased brother-in-law was attempting to evade him by entering the Krebs' home the rifle was discharged resulting in the fatal wound. The defendant left the premises and was later apprehended by the police. He waived his *Miranda* rights and gave a voluntary statement to the police. While the statement does not admit a purpose to kill the decedent in the manner in which it was accomplished, it does establish a premeditated desire to harm him. Certainly the statements indicated no remorse over the slaying and gave the District Attorney ample evidence to argue premeditation. He faced a situation where the State had an excellent case of First Degree Murder. Although it was not always directly, he did, during the course of the trial, get across to the jury that Randy Strain was not a paragon of virtue, that the defendant believed that Randy Strain had raped his wife on a prior occasion and that there was a strained relationship between his sister and her husband. The defense also raised the question that the shooting might have been, in part at least, accidental. He in short made a record inclined to gain as much sympathy as possible from the jury. It has been said that the 'proof of the pudding is in the eating'. Here counsel obtained a verdict of Second Degree Murder when the facts would well have supported a verdict of First Degree Murder. The tactics used resulted in a favorable verdict for the defendant.

"The Court concludes that the representation afforded the defendant was not so inadequate as to amount to no counsel at all and to reduce the trial to a sham and a mockery of justice."

We believe the case was adequately and fairly tried. As opined by the trial judge, the jury could well have found the defendant guilty of first-degree murder. It is not probable a new trial would result in a verdict more favorable to the defendant, accordingly we will not order a new trial in the interest of justice pursuant to sec. 251.09, Stats.

As to the final issue, we find no abuse of discretion in the imposition of a sentence of not less than five years nor more than twenty. The statutory limits of a sentence for second-degree murder are not less than five years and no more than twenty-five years.[2]

A presentence report was ordered, prepared and submitted to the trial court and defense counsel. The lengthy report concludes that incarceration is indicated but should not be excessively lengthy. While we have said presentence reports are desirable, they are neither necessary nor binding upon the trial court.[3] The responsibility for the imposition of sentence is upon the trial judge based upon all of the factors before him which he deems relevant and the exercise of his discretion giving due consideration to the gravity of the crime, fairness to the defendant and consideration of the demands and effect upon the public.

*McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, requires that the trial court set forth adequate reasons for the imposition of the sentence. We believe Judge DAHLBERG did just that. At the time of sentencing he stated:

"As you are aware the jury returned a verdict of second degree murder. The court is, of course, aware of all the facts and circumstances of the offense. I am also aware of your background which is set forth in the extensive presentence prepared for the court. The court is also aware of the facets of sentencing that the court must consider in this matter. As far as punishment is concerned, perhaps you have been punished in a fashion. As far as rehabilitation is concerned hopefully you could be returned to society and be a useful citizen. For this reason I feel that incarceration is indicated. I have considered all the facts in this matter, the facts elicited during the course of trial. Regardless of the type of man

[2] Sec. 940.02, Stats.

[3] *State v. Schilz* (1971), 50 Wis. 2d 395, 403, 184 N. W. 2d 134; *see also:* sec. 972.15, Stats.

Mr. Strain may or may not have been, regardless of the fact that Mr. Strain may or may not have raped your wife, he was a human being and on the facts alleged there was no question of self-defense. On all the facts I feel that a period of incarceration is required. The penalty for second degree murder is a term in prison of not less than five years nor more than twenty-five years. Accordingly, it is the judgment of the court that you be sentenced to the Wisconsin State Prisons at Hard Labor for an indeterminate term not to exceed twenty (20) years. . . ."

We are of the opinion the trial court did set forth adequate reasons for the imposition of the five to twenty-year sentence and that in doing so it did not abuse its discretion.

*By the Court.*—Judgment and order affirmed.