STATE v. COLLIN CROSS.

206 N. W. 2d 371.

March 30, 1973—No. 43694.

*Warren Spannaus*, Attorney General, and *Wallace C. Sieh*, County Attorney, for appellant.

*Plunkett, Schmitt & Plunkett* and *Roger S. Plunkett*, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Schultz, JJ.

ROGOSHESKE, JUSTICE.

Defendant stands charged with unlawful possession of a small amount of marijuana[1] and with the unlawful possession of amphetamines.[2] Upon defendant's pretrial motion, the district court ordered suppressed the seized narcotics found upon a search of defendant's person incident to his arrest under a warrant for allegedly committing a misdemeanor theft. Since the suppressed evidence is essential to prosecuting defendant for the offense charged, the state, as authorized by Minn. St. 632.11, subd. 1(3), appeals. We reverse.

The sole question raised is whether, upon the facts and circumstances established by the evidence submitted at the suppres-

[1] Minn. St. 152.02, subd. 2(3); 152.09, subd. 1(2); 152.15, subd. 2(4). Section 152.01, subd. 16, defines a "small amount" of marijuana as "1.5 ounces avoirdupois or less."

[2] Minn. St. 152.02, subd. 4(1)(a); 152.09, subd. 1(2); 152.15, subd. 2(2).

sion hearing, the scope of a warrantless search of defendant's person incident to his admittedly lawful arrest for the minor offense was permissible under Federal constitutional standards.

On November 1, 1971, a warrant was issued for defendant's arrest for an alleged theft from an Austin drugstore on October 28 of a wallet valued at $5 in violation of that city's ordinance. While the warrant was outstanding, Detective Carl Johnson of the Austin Police Department received a telephone tip during the morning of November 23 from an informer known to the officer personally for a number of years and, because of the officer's promise of confidentiality, identified in the record only as steadily employed by "Hormel's." The informer told the officer that he had personally seen defendant during the evening of November 22 in Austin and had personally observed defendant in possession of "some marijuana and * * * a gun." Based upon this tip and personal knowledge of defendant and his past law violations, the officer caused a memorandum to be posted in the police department "day book" on November 23 notifying all patrolmen of the following:

"SUBJECT: Collin Cross                    DATE: 11-23-71
"MESSAGE: There is a warrant for above subject in warrant box. Det. Johnson has information that he is in town and that he is supposed to be carrying drugs and that he is also supposed to be armed. If seen pick up and jail. Use caution."

It was further established by the unrefuted and unimpeached testimony of Detective Johnson that the informer was "an upstanding citizen" and was reliable since the officer had previously received and acted upon accurate, confidential information from him six or seven times.[3]

---

[3] The Austin police records and juvenile court records of defendant were offered by the state to support the officer's basis for issuing the warning memorandum. Upon objection as to materiality and confidentiality, the juvenile court record was withdrawn, and at the close of the hearing, the court (we believe erroneously) excluded the police records as immaterial.

On November 25, 1971, at about 8 p.m., information that defendant had been seen in the downtown Austin area was dispatched to all patrolmen. Officer James Bucholz, who was patrolling that area, observed defendant, known to him personally, riding as a passenger in an automobile with three companions. The officer then requested the aid of Officer Dennis LaMotte (also patrolling in another police car). The officers, activating their flashing signals, stopped the automobile and parked the patrol cars in front and to the rear of it. Forewarned of the danger which could be involved, both patrolmen drew their pistols, approached the vehicle, and ordered its occupants to keep their hands visible and to step out of the car. After announcing to defendant that he was "under arrest with [a] warrant" which would be given to him later, Officer Bucholz ordered him to place his hands "[o]n the trunk of the car" and spread his feet in order to enable the officer to undertake a search of defendant's outer garment, a three-quarter length, army-type jacket. He began by patting down defendant's coat from the top. First, he felt something "round" and "hard" on the left side, then "something on the right side that was hard," and then went into the pockets for "some type of weapon." Checking the left large bottom pocket first, he found and removed what appeared to him to be "a marijuana cigarette." Keeping his right hand on the right side because he "could definitely feel what appeared to be a knife," he reached into the left top pocket with his left hand and removed a plastic vial, later determined to contain amphetamines. Concluding the search of defendant's outer garment only, the officers then placed him in the patrol car and took him to the police station.

1-2. The United States Supreme Court, applying principles reiterated in a long line of cases concerned with the permissible scope of a warrantless search incident to a lawful arrest,[4] re-

---

[4] Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. ed. 652 (1914); Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. ed. 543 (1925); Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. ed. 145

cently declared in Chimel v. California, 395 U. S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. ed. 2d 685, 694 (1969), that when such an arrest is made—

"* * * it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."

Such contemporaneous searches and seizures, whether made pursuant to an arrest warrant or based upon probable cause without a warrant, are regarded as reasonable because the necessities inherent in the capture and custody of an accused give rise to—

"* * * the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as * * * the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." Preston v. United States, 376 U. S. 364, 367, 84 S. Ct. 881, 883, 11 L. ed. 2d 777, 780 (1964).

As we read Chimel and the prior decisions which the court therein reviewed, including the so-called "stop and frisk" [5] cases and the subsequent case of Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975, 26 L. ed. 2d 419 (1970), a police officer, incident to a lawful arrest for a serious offense, may, without a search warrant, conduct a search at the place of arrest of the arrested person's garments for any type of dangerous weapon which could

_____

(1925); Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. 2d 777 (1964).

[5] Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. ed. 2d 889 (1968); Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. ed. 2d 917 (1968).

be used to assault the officer or effect an escape, and may seize any such weapon. Further, the search may be carried out to prevent concealment or destruction of evidence reasonably related to the offense for which the person is arrested and to search for and seize evidence of the commission of the offense and, in addition, any contraband or things otherwise unlawfully possessed.

However, where the search is incident to a lawful arrest for a minor offense involving likely possession of stolen property, such as in this case, the scope of the search must be further limited in order to meet the Fourth Amendment test of reasonableness. Although the United States Supreme Court has not been confronted directly with this type of case, we believe that a search in such a case should be limited to the garments of the person arrested for the single purpose of preventing destruction or concealment of evidence of the theft. Such limitation may be enlarged in area and intensity only under unusual or exigent circumstances which meet the standard of probable cause warranting a belief in the arresting officer that the person arrested is armed or otherwise dangerous or that he has committed a more serious offense. With due regard for the right of privacy in cases of lawful arrest for either a serious or minor offense involving theft, the geographic scope or the intensity of the search should not extend beyond what is reasonably necessary to accomplish the purposes of effectuating the arrest with safety of the arresting officer, the arrested person, and others present and of preventing concealment or destruction of any evidence concerning the commission of the crime.[6]

3. Defendant readily concedes that the arresting officer had a right to search his garments for weapons and perhaps for the

---

[6] This analysis appears to be consistent with the A. L. I. Model Code of Pre-Arraignment Procedure (Official Draft No. 1, July 15, 1972), §§ SS 230.1(1) (a, c); SS 230.3(3). The possibility of a variance may be where the arrested person is immediately taken into custody and searched at the police station. The code proposes that the geographic scope or intensity of the search at the place of arrest, absent "exceptional circumstances," should be strictly limited.

stolen billfold, but he contends that the scope or intrusive extent of the search, when viewed in relation to the minor offense for which he was arrested, the safety of the officer secured by the drawn weapons, and the finding that defendant possessed only a knife, became exploratory, exceeding the limits of reasonableness which, he argues, we condemned in State v. Curtis, 290 Minn. 429, 190 N. W. 2d 631 (1971), and State v. Gannaway, 291 Minn. 391, 191 N. W. 2d 555 (1971).

The trial court, in ordering suppression, quite understandably relied on the Gannaway case in this perplexing and developing area of the law. In Curtis and Gannaway, we held constitutionally impermissible searches of persons incident to their arrest for minor or "trivial" traffic offenses. The result in both cases was to suppress marijuana found in possession of the arrested person. Essentially, both decisions were based upon the rule that, no search for weapons or contraband is constitutionally reasonable when incident to an arrest for a minor traffic infraction unless the arresting officer has reason to believe he is arresting an armed or dangerous individual or "has probable cause for believing the defendant has committed a more serious crime." State v. Curtis, 290 Minn. 429, 433, 190 N. W. 2d 631, 634 (1971). Our decision in Gannaway was based on our conclusion from the record submitted that the search of the accused was exploratory, unreasonably extending beyond any relation to the traffic offense of driving the wrong way on a one-way street—an offense which, by its very nature, could not bear "fruits" or "implements" of such an infraction.

Significantly, the record in this case does not involve the element of unlawful possession of the stolen billfold. More important, the evidence as set forth above establishes probable cause, warranting a belief by the officers that defendant might be dangerously armed and in possession of marijuana. Such circumstances do not, in our view, fall within the rule of the Curtis case prohibiting the use of an arrest for minor traffic violations as a pretext for searches directed toward unrelated offenses. Be-

cause there doubtless existed probable cause to search for weapons and narcotics, the scope of the search of defendant's garments at the place of his arrest was not unreasonable under constitutional standards—apart from the arguable justification for such a search to find the stolen wallet.[7]

Defendant also argues that, if the officers had probable cause to believe he possessed narcotics, they should have obtained either an arrest warrant or a search warrant for that more serious offense. Although this argument is advanced primarily as bearing on the reasonableness of the extent of the search, we take note that the United States Supreme Court has repeatedly declared that the language and general principle of the Fourth Amendment manifest a preference for searches under warrants to those incident to lawful arrest which are regarded as "exceptional."[8] However, given probable cause, searches incident to arrest continue to be upheld even where the police could have obtained a search warrant. Chambers v. Maroney, *supra*; State v. Rak, 292 Minn. 434, 193 N. W. 2d 603 (1971). Here, the record is silent as to whether it was reasonably practical for the police to obtain a search warrant, and we decline to speculate concerning the matter. Quite likely, there are many who may regard the necessity or desirability of obtaining a search warrant to search the person of one subject to lawful arrest as extremely technical. However, bearing in mind the broad search which may be conducted under a search warrant and that a search incident to arrest has always been held strictly limited, we observe that, in light of the ample evidence in this case upon which a neutral and detached magistrate could have found probable cause to issue a search warrant, the arresting police officer could have been

---

[7] Cf. A. L. I. Model Code of Pre-Arraignment Procedure (Official Draft No. 1, July 15, 1972), § SS 230.2.

[8] See, e.g., Camara v. Municipal Court of San Francisco, 387 U. S. 523, 87 S. Ct. 1727, 18 L. ed. 2d 930 (1967); Chambers v. Maroney, 399 U. S. 42, 61, 90 S. Ct. 1975, 1986, 26 L. ed. 2d 419, 433 (1970) (Harlan, J., concurring in part and dissenting in part).

relieved of the burden of making that determination at the time of arrest, and the suppression hearing and this appeal likely would have been avoided.[9]

Defendant is allowed attorney's fees, payable to his attorney, in the amount of $750. Minn. St. 632.13(8).

Reversed.

---

[9] See A. B. A. Standards for Criminal Justice, The Prosecution Function and the Defense Function, Defense Function, § 5.2(a, b) (Approved Draft, 1971) regarding defense counsel's ultimate responsibility for deciding whether to present pretrial motions, and § 1.1(d), declaring that intentional misrepresentation of fact or law to the court is unprofessional conduct. See, also, A. B. A. Code of Professional Responsibility, DR 7-102(A) (5) (adopted August 4, 1970, 286 Minn. ix).