287 So.2d 901

### In re Archie TAYLOR

v.

### STATE of Alabama.

### Ex parte STATE of Alabama ex rel. Attorney General.

### SC 430.

Supreme Court of Alabama.

Sept. 27, 1973.

William J. Baxley, Atty. Gen. and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State, petitioner.

No brief for respondent.

MADDOX, Justice.

The central issue presented is the role of defense counsel in a criminal prosecution.

Archie Taylor was convicted of first degree murder and sentenced to life imprisonment. Except for Taylor's alibi testimony, there was no substantial conflict in the evidence presented at the trial.

Four eye-witnesses, who knew both defendant and deceased, testified that Taylor accosted the deceased, Jimmie Lee Mason, in South Birmingham, that the two men argued and Taylor shot and killed Mason. Taylor was arrested almost immediately after the murder a short distance from the scene.

The trial court appointed counsel to represent Taylor. His attorney made a thorough investigation of the facts in the case. Counsel learned early in his investigation that the first officer to arrive found a partially opened knife near deceased's body. The officer had taken custody of the knife to preserve it as evidence, and had left then to pursue Taylor. When this officer returned to the scene, he found the deputy coroner examining the deceased. He told the coroner about the knife. Other witnesses testified that they did not see Mason with a knife.

The defense attorney also went to the coroner's office and inquired whether a blood sample was taken from Mason's body to determine if he had been drinking. Counsel learned that a blood sample had been taken, and that according to the State Toxicologist's report, the deceased was intoxicated shortly before death.

On several occasions before trial, defendant's attorney conferred with Taylor and told him about the knife and Mason's intoxication and that he could make out a good case of self-defense. Taylor replied, "Maybe we could, *but I wasn't there.*" Defense counsel said, "Well, I cannot make out a case of self-defense if you weren't there." Taylor said, "Nonetheless, that is what I am going to say. *I wasn't there.*"

Counsel begged Taylor to let him proceed with self-defense. On each occasion Taylor insisted that he could not plead guilty in good conscience. Counsel advised Taylor that without some evidence of self-defense, the knife found near the deceased, and the deceased's state of intoxication could not be proven. Taylor said he understood this, but he could not admit killing the deceased.

Defense counsel also obtained an agreement for Taylor to bargain his plea. The prosecutor agreed to recommend a twenty year sentence if Taylor would plead guilty to a lesser charge. Taylor refused.

From indictment to trial, Taylor said he was in a cafe about two blocks from the murder scene and when he left the cafe, he saw an ambulance and a crowd of people gathered around. Two minutes before trial, he turned to his lawyer and said, "By the way, I do remember where I was. I was in jail." He produced a receipt from the warden at the county jail and claimed the date thereon was August 1, 1971.

The lawyer defended Taylor on his alibi, although strong evidence was presented to indicate that Taylor was lying. First, no one in the cafe had seen Taylor the morning of the murder. Secondly, the warden testified that what appeared to be August 1 on the receipt was actually August 7, one day after the murder.

The Court of Criminal Appeals noted that Taylor's attorney was "faced with a recalcitrant and uncooperative defendant who was adamant in 'quarterbacking' his own trial."

During a recess in the main trial, the defendant's attorney told the trial judge about the knife and Mason's intoxication and that Taylor had refused to cooperate by not allowing him to defend him on self-defense. The trial judge told the attorney to "make voluminous notes, so that if he needed to remember almost immediately, or years later, that he would have enough notes to refresh his recollection about this, because in my opinion, the petitioner (defendant), through interference in this case, or because the case was the case

it was, or whatever it was, after a long period of time in the penitentiary, then he would come back and say that someone had improperly represented him."

Five days after his conviction, Taylor wrote a letter to the trial judge. In it the defendant said, "I am writing to ask you to reconsider my case for and (sic) appeal on the grounds of misrepresentation by my lawyer. He fail to product (sic) evidence in my faver (sic)."

The trial judge treated the letter as a motion for a new trial. The court appointed another lawyer to represent Taylor at the hearing on the motion and on appeal. Taylor testified at the hearing that, "He (i.e., his attorney at the main trial) haven't mentioned self-defense to me during the whole time he walked (sic) up to me." The attorney who represented Taylor during trial contradicted his client's testimony by restating matters already brought out; that early in the investigation he discovered the knife and that deceased was intoxicated; that he had pleaded with his client to let him introduce this evidence; that Taylor plead self-defense; and that Taylor refused to do so and vehemently denied that he shot and killed the deceased.

The trial court overruled Taylor's motion for a new trial.

On appeal, the Court of Criminal Appeals reversed Taylor's conviction and held that the motion for a new trial should have been granted. Taylor v. State, Ala.Cr. App., 51 Ala.App. ——, 287 So.2d 889 (1973).

This court granted the State's petition for certiorari.

■ It affirmatively appears that after a full, independent investigation of the circumstances and facts, after consultation with his client, defense counsel recommended to Taylor that he admit to killing the deceased in self-defense. The record also clearly reveals that Taylor, on several occasions, said that he had an alibi and that, "I wasn't there."

Did the defense attorney fail to perform in his role as defense counsel? A majority of the Court of Appeals thought so. We do not think so, and must reverse that court.

■ It is well settled that every person is entitled not only to the assistance of counsel, but also to the effective assistance of counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932). Constitution of Alabama, Art. I, § 6. Also, the State must appoint counsel for an accused felon if he cannot afford to hire his own attorney. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, 93 A.L.R.2d 733 (1963); Title 15 § 318(6), Code of Alabama, 1940, Recomp. 1958 (1971 Supp.).

This concept of "effectiveness" as a part of the Sixth Amendment's guaranty of assistance of counsel first appeared in *Powell,* supra.

"'* * * [T]he record indicates that the appearance was rather *pro forma* than zealous and active . . .' Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense." *287 U.S. at 58, 53 S.Ct. at 60.*

\* \* \* \* \* \*

"* * * [I]n a capital case, where the defendant is unable to employ counsel . . . it is the duty of the court . . . to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *287 U.S. at 71, 53 S.Ct. at 65.*

In Williams v. Beto, 354 F.2d 698, 704 (5th Cir. 1965), the Fifth Circuit Court of Appeals said:

"*It is the general rule* that relief from a final conviction on the ground of incompetent or ineffective counsel will be

granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation." (Emphasis added.)

The "mockery of justice" rule is frequently cited as a minimum standard of competence and efficacy.[1] Other factors often mentioned include the fairness of the trial as a whole, the reasonableness of counsel's assistance,[2] loyalty to client, good faith, and the nature and extent of counsel's pre-trial preparation and opportunity for conference.[3]

■ No one factor determines whether defendant is effectively represented in accord with due process of law. There is a wide range of acts and omissions which result in charges of ineffective counsel.

■ The nature of the problem of misrepresentation is further reason for the lack of an all-encompassing definition of "effectiveness" or "ineffectiveness." Effective assistance does not mean counsel is without error. What may later seem to be error may have been a trial tactic at the time. Further, conviction of a client does not prove the lack of skill or zeal on the part of counsel. See Mills v. State, 275 Ala. 217, 153 So.2d 650, cert. denied, 375 U.S. 867, 84 S.Ct. 142, 11 L.Ed.2d 95 (1963); Echols v. State, 276 Ala. 489, 164 So.2d 486 (1964); Aldridge v. State, 278 Ala. 470, 179 So.2d 51 (1965).

The proper role of defense counsel has received much attention by members of the judiciary and the legal profession. In 1963, the American Bar Association began formulating criminal justice standards relating to proper method of handling a criminal case. After careful and deliberate screening and drafting, seventeen Standards for the Administration of Criminal Justice have been approved. They provide guidance at each stage of a criminal trial from the police function to the last post-conviction proceeding. The Standards, designed to strengthen the criminal justice system, are suggestion guidelines for use in the fifty states and the federal jurisdiction. See "The American Bar Association Standards for Criminal Justice: Prescription for an Ailing System," Tom C. Clark, 47 Notre Dame Lawyer 429 (1972); "Standards for the Administration of Criminal Justice," Howard C. Bratton, 10 Natural Resources Journal 127 (1970), also in 8 American Criminal Law Quarterly 146 (1970).

"The ABA Standards are neither revolutionary nor novel  .   .  ..

" * * *  In truth, the ABA Standards in most instances represent a distillation and restatement of what is already the best practice and procedure in many jurisdictions. They are a blend of clarification, simplification, unification, renovation, and modernization of the whole system .  .  .  ." 47 Notre Dame Lawyer at 433.

The ABA Standards relating to The Defense Function, Approved Draft, 1971, provide in § 5.2 that a defendant must decide what plea he will enter. § 5.2 states:

"Control and direction of the case.

1. See e.g., Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707 (1958); Busby v. Holman, 356 F.2d 75 (5th Cir. 1966); O'Malley v. United States, 285 F.2d 733 (6th Cir. 1961); Trammell v. State, 276 Ala. 689, 166 So.2d 417 (1964); Hendricks v. State, 281 Ala. 376, 202 So.2d 738 (1967); Odom v. United States, 377 F.2d 853 (5th Cir. 1967); United States v. Summerlin, 298 F.Supp. 929 (M.D.Ala.1969); United States v. Long, 419 F.2d 91 (5th Cir. 1969).

2. MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960).

3. See e.g., Smotherman v. Beto, 276 F.Supp. 579 (N.D.Tex.1967); Pineda v. Bailey, 340 F.2d 162 (5th Cir. 1965); "Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases," Jon R. Waltz, 59 Northwestern L.Rev. 289, 308–309 (1964).

"(a) *Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:* (i) *what plea to enter;* (ii) *whether to waive jury trial;* (iii) *whether to testify in his own behalf.*

"(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

"(c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation." [4] (Emphasis added.)

The commentary to the Standards is as follows:

" * * * The requirement that the defendant personally enter a guilty plea and that it be voluntary and informed carries the implication that it is the defendant who must make the choice. See Machibroda v. United States, 368 U.S. 487, 493 [82 S.Ct. 510, 7 L.Ed.2d 473] (1962); Kercheval v. United States, 274 U.S. 220 [, 47 S.Ct. 582, 71 L.Ed. 1009] (1926); Orfield, Criminal Procedure from Arrest to Appeal 294 (1947)." Commentary, ABA Standards, The Prosecution and The Defense Function, § 5.2, p. 238. See also "The Standards of Criminal Justice in a Nutshell,"

William H. Erickson, 32 Louisiana Law Review 369, 403 (1972); "Counsel for the Prosecution and Defense—Their Roles Under the Minimum Standards," Warren E. Burger, 8 American Criminal Law Quarterly 2 (1969); "Some Answers to Your Criminal Law Problems—The American Bar Association Criminal Justice Standards," Lawrence S. Margolis, D. C. Bar Journal, October-February 1973, p. 23.

■ What plea to enter is a decision which must be made voluntarily and intelligently, *by the accused.* See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Commonwealth v. Forbes, 450 Pa. 185, 299 A.2d 268 (1973); McClendon v. People, 174 Colo. 7, 481 P.2d 715 (1971); Martinez v. People, 173 Colo. 515, 480 P.2d 843 (1971). See Comment, "Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest," 54 Cal.L.Rev. 1262, 1267–68 (1966).

■ In Commonwealth v. Forbes, supra, the Court cites with approval § 5.2(a) of The Defense Function. There, defendant, accused of first degree murder, pleaded guilty. The Court was satisfied that the plea was voluntary. Before trial, defendant requested the right to withdraw his guilty plea. Defendant's counsel threatened to withdraw from the case if defendant pursued his request, so defendant withdrew his request. The Court held, in part, that defendant's continuance with his guilty plea was involuntary since defendant was not informed of his right to change his plea and have new counsel appointed. If a guilty plea is induced by any act which renders it involuntary and not the

4. § 5.2 of The Defense Function is cited with approval in:
 Morse v. People, 501 P.2d 1328, 1331 (Colo. 1972); Steward v. People, 498 P.2d 933, 934 (Colo.1972); McClendon v. People, 174 Colo. 7, 481 P.2d 715, 719 (1971); Martinez v. People, 173 Colo. 515, 480 P.2d 843, 844 (1971); People v. Brown, 54 Ill.2d 21, 294 N.E.2d 285, 287 (1973); Commonwealth v. Forbes, 450 Pa. 185, 299 A.2d 268, 270–271 (1973); State v. Harper, 57 Wis.2d 543, 205 N.W.2d 1, 7–8 (1973); State v. Cross, 206 N.W.2d 371, 376 (Minn.1973); Sabella, United States ex rel. v. Follette, 432 F.2d 572, 576 (2nd Cir. 1970).

defendant's personal choice, it is void. Commonwealth v. Forbes, 450 Pa. 185, 299 A.2d at 271 (1973); Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478 (1962).

In McClendon v. People, 174 Colo. 7, 481 P.2d 715, 719 (1971), the Colorado Supreme Court, citing § 5.2 of The Defense Function, said: *"It is only when the question arises whether the defendant should plead guilty,* waive a jury trial, or take the stand *that defense counsel must be governed by and abide by the wishes of his client."* (Emphasis added.)

The case before us is similar to the facts in Martinez v. People, 173 Colo. 515, 480 P.2d 843 (1971). Defendant was convicted of burglary. Appointed counsel had advised defendant to plead guilty to a lesser charge since his defense to the burglary charge was weak. Accused refused to follow the advice of counsel and stated that he wished to have his case tried. The lawyer then told defendant, "I am glad it is not me that is facing the court with the case that you have." Counsel also advised the court that accused had made some strong statements which would handicap him in representing defendant. After conviction, defendant claimed he did not receive effective representation, resulting in denial of a fair trial.

The Supreme Court of Colorado said:

"The standard of 'effective assistance of counsel' . . . does not guarantee a defendant the right to choose his appointed counsel . . . Nor does it guarantee defendant an attorney with whose advice he can agree. . . . There are, however, three areas in which the will of the defendant must be allowed to prevail:

" 'In making each of these decisions—whether to plead guilty, whether to waive jury trial, and whether to testify—the accused should have the full and careful advice of his lawyer. Although counsel should not demand that his own

view of the desirable course be followed, he is free to engage in fair persuasion and to urge his considered professional opinion on his client. *Ultimately, however, because of the fundamental nature of these three decisions, crucial in such basic matters governing his own fate, the decisions on these matters belong to the accused.'* A.B.A. Project on Standards for Criminal Justice, The Prosecution Function and The Defense Function. Approved draft Feb. 8, 1971." 480 P.2d at 844. (Emphasis added.)

The Court of Criminal Appeals says that counsel must control the litigation, and that when Taylor told his attorney what defense he must put up and when his attorney went with the alibi, "the attorney ipso facto surrendered to defendant's control of the law suit." We must disagree. It is true that generally defense counsel is responsible for trial strategy. § 5.2(b) . The Defense Function. Matters of trial strategy, in the absence of a clear showing of improper or inadequate representation, are generally left to the professional judgment and discretion of the defense counsel. Edwards v. State, 287 Ala. 588, 253 So.2d 513, 517 (1971). But the issue here is not one of trial strategy, but one of what type plea to enter. Taylor has yet to admit he killed Mason. Implicit in the matter of self-defense is an admission of the commission of a *justifiable* homicide. Many of the charges of ineffective representation by counsel have occurred in the post-Gideon era. Chief Justice Burger, when he was working on the Standards of Criminal Justice, candidly described what frequently happens:

"Very quickly we came to the question which is—and your trial judges know this so well—the question of who controls the case. It is an extremely important factor because today the 'guard house' or 'jail house lawyer' who acquires a certain limited skill in certain areas is flooding his lawyer, especially a court appointed lawyer, with instructions about how to run the case and what mo-

tions to make, etc. This has created a great problem. These distinguished criminal defense lawyers were very firm in the proposition that the lawyer must control the case—the lawyer as a professional must control the case. I remember one of these lawyers using as analogy, that any other standard would be as ridiculous as having a man go into the hospital, to have his appendix taken out by a local anesthetic, telling the doctor, 'No, don't cut there, cut here. Don't clamp that vein, clamp this one. Don't do this, do that.' This was merely a concrete reflection of what these men learned from long experience . . . . the lawyer must control the case.

" * * * We come now to the exceptions. *The defendant himself, the accused, must have power to decide whether he will plead guilty or not guilty.* The lawyer may use persuasion, he may use the arts of the advocate, but the *defendant and only the defendant has the final power to say whether he will plead guilty or whether he will plead not guilty and stand trial . . . .* " (Emphasis added.) "Counsel for the Prosecution and Defense—Their Roles Under the Minimum Standards," Warren E. Burger, 8 American Criminal Law Quarterly 2, 4–5 (1969).

In State v. Harper, 57 Wis.2d 543, 205 N.W.2d 1, 9 (1973), the Supreme Court of Wisconsin expressly approved § 5.2 of The Defense Function to guide them in determining what constitutes "effective representation." That court said:

"We think it is time for this court to restate a higher test for competency of counsel for the future. This court has always been most solicitous of the right of one accused of crime to be properly and adequately represented by counsel. Effective representation is not to be equated, as some accused believe, with a not-guilty verdict. But the representation must be equal to that which the ordinarily prudent lawyer, skilled and

versed in criminal law, would give to clients who had privately retained his services. Just as an indigent is entitled to receive from a doctor or a dentist the same standard of professional care given to those able to pay for medical and dental services, so, too, is he entitled to the same standard of professional legal services from an attorney. We now approve the ABA Standards cited in this opinion for future cases as partial guidelines to the determination of effective representation; . . ." Secs. 3.2, 3.6, 3.9, 4.1, and 5.2 of American Bar Association Project on Standards For Criminal Justice, Standards For Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, Approved Draft, 1971.

Counsel did all that was required of him. He carried out a thorough investigation of the facts without regard to the anticipated plea. He gave Taylor his candid opinion of all aspects of the case. He told Taylor that, considering the evidence, defendant had a good case of self-defense. After he had explored all relevant facts and analyzed the law, he advised Taylor to enter a guilty plea bargain. He used reasonable persuasion to assist Taylor in a sound decision.

He discussed the matter with the trial judge. He made a record of the circumstances surrounding the conflict between himself and Taylor and of the action taken. See § 5.2(c) The Defense Function.

In Harried v. United States, 128 U.S. App.D.C. 330, 389 F.2d 281, 284–285 (1967), the Court said:

"The burden on the Appellant to establish his claim of ineffective assistance of counsel is heavy. . . .

"In assessing [such] a claim . . . we look to the entire record. . . ."

Taylor failed to establish his claim. The ultimate decision of what plea to enter rested with Taylor. He denied his guilt throughout.

It is difficult for us to imagine what more defense counsel could have done in view of Taylor's insistence of innocence.

For the reasons set out above, we hold that the Court of Criminal Appeals erred by reversing Taylor's conviction and remanding the cause for a new trial.

Reversed and remanded.

MERRILL, HARWOOD and McCALL JJ., concur.

BLOODWORTH, J., concurs specially.

JONES, J., with whom HEFLIN, C. J., and FAULKNER, J., join, concurs specially.

COLEMAN, J., not sitting.

BLOODWORTH, Justice (concurring specially):

I concur in the decision to reverse the Court of Criminal Appeals on the grounds that the decision as to whether to present an alibi or self-defense defense is properly decided by the defendant himself, based on the facts of the case. Defendant Taylor in this case clearly made his choice to present an alibi defense after receiving competent legal advice. His counsel ably presented this defense. Therefore, defendant had the benefit of effective assistance of counsel as required by Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

JONES, Justice (concurring specially).

The impact of *Gideon* on American jurisprudence was not confined to the rights of the accused, but extended to the enhancement and dignity of the legal profession. The criminal justice system cannot constitutionally operate without the lawyer. Our Court by this opinion has now rightly provided the essential counterpart to this doctrine. If the lawyer, as advocate for the accused, is an indispensable part of the system, then the system that he honors must honor him; and it must not allow him to become a pawn for the proverbial shell game. He must be free to act out his full role. He is the professional representative of his client—not his alter ego.

The fact that this landmark opinion results in the affirmance of a conviction must not be construed as striking a blow against individual rights. Conversely, in my opinion, the Alabama Supreme Court has this day heralded a resounding victory for the adversary system on behalf of the criminally accused.

HEFLIN, C. J., and FAULKNER, J., concur.