Appellant was convicted under § 13A-5-31 (a)(5) Code of Alabama 1975, for the murder of a police officer because of some official act or performance by such officer: to-wit, effecting the lawful arrest of the appellant. After a separate hearing on aggravating and mitigating circumstances, the jury returned a verdict fixing appellant's punishment at death. Subsequently, the trial court weighed the aggravating and mitigating circumstances pursuant to § 13A-5-33 Code of Alabama 1975, and sentenced appellant to death. The court issued both written and oral findings of fact from the trial and sentence hearing which enumerated the aggravating circumstances the court found sufficient to support the sentence of death.[1] This appeal followed.
Eddie Upshaw, a resident of Hurtsboro, Alabama, testified he went to police headquarters on January 27, 1981, to obtain help in removing a man from the B. Lindsay residence. Upshaw then returned to the Lindsay home where several people had gathered. He observed the victim, Officer George L. Claypool, bring the appellant from around the back of the house to the police vehicle. The two men were talking, and then suddenly they were on the ground.
L.A. Davis testified he observed Officer Claypool and man tussling in the ditch in front of Willie B. Lindsay's home on January 27, 1981. He heard a gun shoot three or four times, and then saw the unidentified man run around the corner.
Mary Wesley Jenkins stated she was staying at the Lindsay residence on January 27, 1981, because her home had burned. She saw the appellant that day at approximately 4:00 p.m. Later that evening, appellant came to the Lindsay home. He entered the house and Ms. Jenkins begged him to leave. Mr. Lindsay left at that point to obtain help. When Officer Claypool arrived, he called the appellant, and the appellant accompanied him to his vehicle. She saw the two men begin to fight, and they fell into a ditch out of her sight. She then heard five gunshots fired. Officer Claypool then got up, and she heard him pleading, "Somebody please help me." Ms. *Page 935 
Jenkins testified that appellant was the only one in the area with the victim at the time the shots were fired.
Willie B. Lindsay recalled that on January 27, 1981, he returned home and was told by his lady friend that there was a man in the back yard. He went to the door and the man, appellant, told him he wanted a place to stay. Mr. Lindsay told appellant he could not stay at his home. He went back inside, and when he checked later and saw the appellant was still there, he went to a neighbor's home to call the police. When he returned he saw the policeman trying to get appellant into the automobile. Appellant refused, and the victim hit him on the leg. The appellant grabbed the officer and they fell into a ditch. At that point, Mr. Lindsay went to call for more help. He heard five shots, then looked out of a neighbor's window and saw appellant running with a gun down by his side.
Vincent Alexander stated that Mr. Lindsay came to his residence on the night of January 27, 1981, to call the police. The police arrived at the same time, and Alexander saw Officer Claypool attempt to get appellant to enter the vehicle. The two men fought, and Alexander saw appellant take Officer Claypool's gun and fire four or five shots as Claypool lay on the ground. Appellant then started up the street and the witness ran into his house.
Marshall Dent, a resident of the neighborhood where the crime occurred, testified that appellant came into his home on the night Officer Claypool was murdered and asked to stay there. He told appellant he could not stay and he made him leave. Mr. Dent thought appellant left, so he left to go to the scene of the murder. When he returned his wife told him she heard a noise. Mr. Dent opened the door and saw appellant going into his kitchen. He then went and got the police who came and took him away.
Mayor Don Williams, Councilman B.W. Vann, Jr., Police Chief Pate and Police Dispatcher Mary Lamb all testified Officer Claypool was on duty as a policeman for the town of Hurtsboro the night he was killed.
Officer Tom Woodward of the Russell County Sheriff's Department stated he arrested appellant at the Dent residence on January 27, 1981, with the assistance of Deputies George Smith and Willie Ross.
Jack Kennedy, of the State Game and Fish Commission, testified he found the pistol, later identified as Officer Claypool's, under the back porch of the Dent house on January 27, 1981.
Officer Herbert Parker of the Russell County Police Department stated he personally opened the police vehicle door and informed appellant he was a murder suspect and read hisMiranda rights before appellant was taken from the area of the crime. He was also present an hour later at the Russell County Jail where appellant took part in a lineup conducted by Officers Newell, Payne, Boswell, and Battle. Appellant did not have an attorney present at that time, nor was he readvised of his rights in Officer Parker's presence.
Officer Tommy Boswell was present at the lineup in which appellant participated. He testified that Mr. Lindsay identified appellant as the man he had seen in his house earlier that night. Officer Boswell also testified that he searched for a prior criminal record for appellant and could find none.
Sergeant Harold Newell of the Alabama Bureau of Investigation testified he took a statement from appellant at the Russell County Jail on January 27, 1981, after reading him his rights. No threat, promise, or hope of reward was made to appellant in order to obtain his statement. Appellant's statement, elicited on cross-examination by defense counsel, appears in the record as follows:
 "I left Houston, Texas on Sunday, January 25, 1981 by bus and went to Montgomery, Ala. I asked the bus driver how much further could I go. The bus driver took me to the Police Station in Union Springs on Sunday, night time. I had been laid off from my job at Pier I Imports in Houston, Texas, where I was a *Page 936 
fork lift driver. I came to Alabama to look for some of my folks that live in Montgomery, Ala. My mother's name is Lillie Daniel. The Police in Union Springs let me spend the night there. I left the Union Springs Police Dept., Monday morning or Tuesday morning. I went to a cafe up the street and got some breakfast. I left there and walked up the street where I knocked on a window at a place of business and was looking at a woman. I must have knocked too hard on the window because it broke. Someone must have called the police, they came and picked me up and took me to jail. They let me out sometime after dinner. One of the Police Officer's took me somewhere to look for a job. I don't know where he let me out. I remember sitting on the railroad tracks throwing rocks and some white dude asked me what I was doing. It was getting close to dark and he told me I couldn't hand (sic) around there. I started asking some people at a house about a place to stay. I remember talking to a man and woman there, they told me there was a Hotel down the road. I walked down the road but couldn't find the Hotel. I went back to the house and asked them again if they knew a place where I could stay. I don't remember any police officer trying to put me in the police car. I remember going under a house and then I was standing in the kitchen of the house. I don't remember how I got there. I don't remember a gun shooting. I blacked out, like lights blinking. I have never blacked out before. I remember alot of Police coming in the house to get me. I don't remember fighting with a Police Officer." (R. 529)
Carol Curlee of the Latent Print Unit of the Alabama Bureau of Investigation testified that appellant's left thumb print matched a latent fingerprint lifted from the cylinder of Officer Claypool's pistol.
Both Leslie Vance, the Russell County Coroner, and Dr. Thomas Gilchrist, a forensic pathology physician for the State, testified Officer Claypool died as a result of the gunshot wound he received. Dr. Gilchrist testified the bullet entered the left hip and traveled to the victim's abdomen.
Lonnie Harden, a firearms coordinator for the State, testified the bullet which was identified as the one taken from Officer Claypool's body was fired by the pistol identified as belonging to Officer Claypool.
William Landrum, a forensic serologist with the state, testified his examination of a brown coat belonging to appellant revealed the presence of Group A human blood, which was the blood type of Officer Claypool.
The state rested at the close of Coroner Vance's testimony. Appellant's motion to exclude based upon the insufficiency of the evidence and the inadequacy of the Miranda warnings and waiver, before the lineup, was denied. The defense rested without presenting any evidence.
Appellant's sole contention on appeal is that the conduct of the appellant's court appointed counsel reduced appellant's trial to a farce, sham or mockery of justice and thereby denied appellant of effective representation by counsel. The problem of inadequate legal representation was compounded by the appellant or his family repeatedly retaining and then dismissing counsel on their own part. The trial judge did everything in his power to insure that appellant was represented by competent counsel at all times, even refusing to allow retained counsel who had been dismissed by appellant's family at a late date, to withdraw from representing appellant at trial. Thus, at trial, appellant was provided with two attorneys; one, the original counsel appointed by the trial court, and two, the retained counsel who sought to withdraw, but who was himself then appointed by the court to represent appellant in conjunction with the first appointed counsel.
Appellant's counsel, while not affirmatively presenting evidence at trial, acted with diligence and propriety at all *Page 937 
phases of the trial process.[2] Both appointed counsel were notified by the trial court of its intent for them to represent appellant no later than October 22, 1981. The originally appointed counsel became involved in the case at appellant's arraignment on February 12, 1981. The secondary counsel became involved on April 29, 1981. Trial was held on November 2, 1981. The record clearly indicates that appellant was not prejudiced by the possibility of his counsel having inadequate time to prepare his defense. Allen v. State, 380 So.2d 313 (Ala.Cr.App. 1979), cert. denied, 380 So.2d 341 (Ala. 1980), cert. denied,449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1981). Further, the record does not show that appellant's counsel was so inept, ineffective, or negligent so as to shock the conscience of the court and render the proceedings at trial a farce, sham, or mockery of justice. Allen, supra; White v. State, 403 So.2d 287
(Ala.Cr.App.), cert. denied, 403 So.2d 292 (Ala. 1981);Robinson v. State, 361 So.2d 1172 (Ala.Cr.App. 1978). The fact that appellant was convicted does not prove a lack of skill or dedication on the part of appellant's trial counsel. Robinson, supra. The record indicates that appellant's counsel filed numerous pretrial motions, vigorously cross-examined the state witnesses, raised and argued appropriate motions and objections introduced evidence, requested the affirmative charge, filed a motion to exclude the state's evidence, and called witnesses in the appellant's favor at the sentencing hearing, as well as presenting evidence of mitigating circumstances. Whether to advise the appellant to take the stand and subject himself to cross-examination by the state is a decision for the trial counsel. Matters of trial strategy are left to the judgment of trial counsel, and absent a clear showing of inadequate representation, such decisions are not grounds for reversal.Robinson, supra.
The "mockery of justice" rule cited supra, has been described as a minimum standard of competence and efficacy. Taylor v.State, 291 Ala. 756, 287 So.2d 901 (1973), cert. denied,416 U.S. 945, 94 S.Ct. 1955, 40 L.Ed.2d 298 (1974). Other relevant inquiries include the fairness of the trial as a whole, the reasonableness of counsel's assistance, counsel's loyalty and good faith, and the nature and extent of pretrial preparation and opportunity for conference. Taylor, supra. The standard adopted by the former United States Court of Appeals for the Fifth Circuit requires counsel "reasonably likely to render and rendering reasonably effective assistance." MacKenna v. Ellis,280 F.2d 592, 5th Cir.; See Annot., 26 A.L.R.Fed. 218, 229 (1976). The record indicates that the appellant's representation was not deficient under any of the above formulations or inquiries. McKinnis v. State, 392 So.2d 1266
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1270 (Ala. 1981).
 "[T]he inadequacy of counsel is not established by his failure to claim every possible legal advantage for his client. While counsel is expected to contest every step of the case, he may make concessions warranted by the facts. Counsel is not obligated to advance points or arguments that are specious or frivolous, or to submit evidence which he believes is inadmissible or immaterial; nor is he called on to manufacture evidence."
23 C.J.S. Criminal Law, § 982 (8) (1961).
McKinnis v. State, supra at 1269.
The Supreme Court of Alabama in Beck v. State, 396 So.2d 645
(Ala. 1981) has indicated standards and procedures to be followed by this court in reviewing capital murder cases governed by the Beck decision. We have reviewed this case in light of those standards, and find that the crime was properly punishable by death and that the sentence was appropriate in both its relation to the crime and to the appellant. *Page 938 
There were no accomplices with which to compare appellant's sentence. We have also searched the record for any other error and have found none. This case is therefore, affirmed.
AFFIRMED.
All the Judges concur.
[1] The trial court's determination of sentence, dated December 4, 1981, is hereto attached as Appendix A. (Volume 3, R. 493-500)
[2] At the sentencing hearing, before the jury, appellant's mother, brother, sister and two psychiatrists testified. The report from Bryce Hospital, Alabama Department of Mental Health, dated September 9, 1981 is hereto attached as Appendix B. (Vol. III, R. 480-481 was also introduced.
 APPENDIX A
STATE OF ALABAMA ) IN THE CIRCUIT COURT OF VS. ) RUSSELL COUNTY, ALABAMA GEORGE DANIEL, ) CASE NO. CC 81-53 Defendant. )
 DETERMINATION OF SENTENCE BY COURT
The defendant herein, with assistance of counsel at all proceedings from arraignment through a trial by jury, was found guilty as charged in the indictment. Thereupon, the trial jury, in a separate proceeding, received evidence related to mitigating and aggravating circumstances, together with oral argument by the State and defense counsel, and after a deliberation in which they weighed the aggravating and mitigating circumstances, the jury returned with a verdict fixing the defendant's punishment at death.
Subsequently, the Court held a hearing to determine whether or not the Court would sentence the defendant to death or to life imprisonment without parole, and at such hearing, the State offered no further evidence other than that produced during both trials by jury. The defendant offered no further evidence to the Court other than that presented during both trials by jury except to make a statement to the Court himself and by counsel.
The Court finds from all the evidence presented to the jury in the trial of the guilt phase of this case, at the sentence phase of this case, and at the separate hearing conducted by the Court that the defendant was guilty and is guilty of the murder of a police officer while such officer was on duty and engaged in a job related act at the time of the murder.
The Court finds that the mitigating circumstances were not sufficient to outweigh the aggravating circumstances, as shown by the trials before the jury and the hearing before the Court.
The Court is of the opinion that the jury verdict fixing punishment at death should be accepted by the Court and such entry of judgment was so entered by the Court.
A summary of the evidence and findings of fact are hereinafter set forth.
FINDINGS OF FACT FROM THE GUILT PHASE, SENTENCE PHASE AND HEARING BY THE COURT.
The defendant, George Daniel, left his home in Texas to go to Montgomery, Alabama traveling by bus. He went to sleep on the bus and woke up after passing through Montgomery, Alabama. After spending the night in Union Springs, Alabama, apparently voluntarily in the jail, a police vehicle took him to the outskirts of Hurtsboro, Alabama on January 27, 1981.
The defendant was seen at approximately 4:00 o'clock P.M. on January 27, 1981 on Railroad Street in Hurtsboro, Alabama and was observed by several witnesses in the neighborhood where the crime was committed during the hours prior to the crime.
The defendant, at a short time prior to the murder, went into the home of Willie B. Lindsay and said he was looking for a place to stay. Lindsay attempted to get the defendant to leave and Mary Jenkins, a resident in the Lindsay home, begged the defendant to leave. Lindsay went to the house of Vincent Alexander, where a phone was located, to call the police for *Page 939 
assistance. Eddie Upshaw, in the same time frame, went to the Hurtsboro Police Department where assistance was requested of Mary Lamb who was the radio dispatcher on duty from 4:00 o'clock P.M. to midnight.
Ms. Lamb placed a call to Officer Claypool who was then on duty to meet a complainant at the home of Willie B. Lindsay.
Officer George L. Claypool drove his police car to the scene of the Lindsay home on Sussex Street; left the lights on in his vehicle, and went to the Lindsay home where he found the defendant, George Daniel, who then left with the officer toward the police car.
Officer Claypool and the defendant were alone near the police car when a struggle between them ensued causing them to go into a ditch. The officer's .357 magnum pistol was taken by force from its holster and several shots were then fired after which the defendant fled the scene. He was observed with a pistol in his hand. The defendant entered the home of Marshall Dent where he was told to leave. Dent thought the defendant had gone so he left his home to go to where he had heard some shooting. When he returned to his home, he saw the defendant going into the kitchen and he left to get the police.
The defendant was arrested in the Dent home by Lt. Tom Woodard, Russell County Sheriff's Office.
The deceased died as a result of bullet wounds received in his abdomen. A bullet removed from the victim was a .357 magnum, the same as the type bullet fired from Officer Claypool's pistol. A fingerprint on this pistol was identified as being the fingerprint of the defendant. At the time of his death, Officer Claypool was a police on official duty with the City of Hurtsboro, Alabama attempting to make a lawful arrest.
The Court further finds that the defendant, George Daniel, murdered Officer Claypool who was on duty and engaged in a job related act.
The following aggravating circumstances are found by the Court to support the imposition of the death sentence:
1. That the murder of Officer Claypool was committed at a time when he was a police officer for the City of Hurtsboro on duty and engaged in a job related act.
2. That the capital felony was committed for the purpose of avoiding or preventing a lawful arrest.
The following mitigating circumstances were considered by the Court:
1. The defendant has no significant history of prior criminal activity.
2. That capital felony was committed while the defendant was alleged to be under some mental or emotional disturbance.
The Court did not find that the victim was a participant in the defendant's conduct or consented to it. The defendant was the sole participant and his participation was not minor. The Court found no indication that the defendant acted under extreme duress or under the domination of any person.
The Court further had the opportunity to observe this defendant on several occasions prior to, during, and after the trial, and was familiar with the defendant's plea of insanity which was not made an issue at the trial. The Court upon request of counsel had in fact had the defendant examined at Bryce Institute, and upon consideration of these matters, the Court is of the opinion that the defendant had the capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of law and that this capacity was not impaired.
The age of the defendant was not a mitigating circumstance.
Upon considering and weighing the aggravating circumstances with the mitigating circumstances, the Court is of the opinion that the aggravating circumstances outweigh the mitigating circumstances.
It is, therefore,
Ordered and adjudged by the Court that no reason can be found to refuse to accept the death penalty and that such death *Page 940 
penalty shall, therefore, be imposed upon the jury verdicts rendered.
DONE this the 4th day of December, 1981.
 /s/ Paul J. Miller, Jr.
Judge, 26th Judicial Circuit
 STATE OF ALABAMA () IN THE CIRCUIT COURT OF VS. () RUSSELL COUNTY, ALABAMA GEORGE DANIEL () CASE NO. CC-81-53
 JUDGMENT
This cause coming on to be heard, on this the 2nd day of November, 1981, comes the State by its District Attorney and comes also the defendant in his own proper person and attended by his counsel, Honorable J. Curtiss Bernard and Honorable Ruben K. King, and the defendant having been duly arraigned upon the indictment in this cause, and having entered his plea of not guilty, there came a jury of twelve good and lawful persons, to-wit: Thomas E. Phillips and eleven others, who having been first duly sworn and empaneled according to law, before whom the trial of this case was entered upon and continued from day to day and time to time, said defendant being in open Court at each and every stage and during all the proceedings in this cause. This the 3rd day of November, 1981, said jurors upon their oath do say, "We, the jury, find the defendant guilty as charged in the indictment. Dated November 3, 1981. Thomas E. Phillips, Foreman." Thereupon the issue was then represented to the trial jury for a sentence hearing at which time the jury was to consider and weigh the aggravating and mitigating circumstances. Now comes the jury with its verdict as follows: "We, the jury, after weighing the aggravating and mitigating circumstances in this case, fix the punishment of the defendant at death. Dated November 4, 1981. Thomas E. Phillips, Foreman." It is therefore considered by the Court, and it is the judgment of the Court that said defendant is guilty of Capital Murder of Law Enforcement Officer on Duty as charged in the indictment, in accordance with the verdict of the jury in this cause, and the sentencing is hereby continued to December 4, 1981 at 2:00 P.M., at which time, the Court will conduct a hearing to weigh the aggravating and mitigating circumstances prior to such sentencing.
 /s/ Paul J. Miller, Jr. Circuit Judge
 STATE OF ALABAMA () IN THE CIRCUIT COURT OF VS. () RUSSELL COUNTY, ALABAMA GEORGE DANIEL () CASE NO. CC-81-53
 SENTENCING
December 4, 1981. This cause coming on to be heard, comes the State by its District Attorney and comes also the defendant in his own proper person and attended by his counsel, Honorable J. Curtiss Bernard and Honorable Ruben K. King, for the purpose of offering evidence to the Court on the issues of aggravation and mitigation. Thereupon the District Attorney offering State's evidence and the defendant, George Daniel, being asked by the Court if he had anything to say why the sentence of the Court should not be pronounced upon him, says nothing in bar or preclusion thereof.
Upon consideration of the aggravating and mitigating circumstances offered and the totality of the evidence, it is therefore, ordered by the Court that the defendant, George Daniel, suffer death by electrocution on the 3rd day of February, 1982, and the Sheriff of Russell County, Alabama, is directed to deliver the said George Daniel to the custody of the Director of the Department *Page 941 
of Corrections and Institutions at Montgomery, Alabama, and the designated executioner shall, at the proper place for the execution of one sentenced to suffer death by electrocution, cause a current of electricity of sufficient intensity to cause death and the application and continuance of such current to pass through the body of said George Daniel, until said George Daniel is dead.
It is further ordered by the Court that the Clerk of this Court shall issue a warrant under the seal of the Court for the execution of the sentence of death, which warrant shall recite the fact of conviction, setting forth specifically the offense, the judgment of the Court and the time fixed for his execution and which shall be directed to the Director of the Department of Corrections at Montgomery, Alabama, commanding him to proceed, at the time and place names in the sentence, to carry George Daniel into execution. The Clerk of the Court shall deliver said warrant to the Sheriff of Russell County to be by him delivered to the said Director, together with the defendant, George Daniel.
Thereupon in open Court on this day, Notice of Appeal is entered and suspension of said sentence is ordered by the Court pending appeal.
It is further ordered by the Court that the defendant, George Daniel, be transported to the custody of the Director of the Department of Corrections at Montgomery, pending said appeal.
 /s/ Paul J. Miller, Jr. Circuit Judge
 APPENDIX B STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH BRYCE HOSPITAL TUSCALOOSA, ALABAMA 35403 PHONE (205) 752-7411 JAIME E. CONDOM, M.D. FOB JAMES ASSOCIATE COMMISSIONER GOVERNOR AND SUPERINTENDENT
 CHARLES A. FETNER GLENN IRELAND, II DIRECTOR COMMISSIONER September 8, 1981 OF MENTAL HEALTH
 The Honorable Paul J. Miller, Jr. Circuit Court Judge Russell County Courthouse
Phenix City, Alabama 36867
 Re: Daniel, George Bryce File: 04 03 77 Your File: CC-81-53
Dear Judge Miller:
George Daniel was admitted to Bryce State Hospital's Forensic Unit on August 7, 1981, under your commitment order with information that Mr. Daniel is currently charged in the Circuit Court of Russell County, Alabama with Murder. The purpose of the commitment was for psychiatric examination regarding Mr. Daniel's present competence to stand trial and his criminal responsibility at the time of the offense charged and Mr. Daniel was to remain at Bryce State Hospital until said examination was completed and a report made to your court. *Page 942 
The post-admission examination, including mental status examination, psychological assessment, social history study, physical examination, and psychiatric evaluation is completed and we are submitting the following report of our findings.
The mental status examinations revealed diagnoses of Axis I, Malingering, V65.20; Axis II, No Diagnosis, V71.09; and Axis III, None.
The psychological assessment revealed that George Daniel made no real effort toward completing any of the psychological testing instruments. Mr. Daniel attempted to mislead the examiner on IQ measures and on Sentence Completions. In the examiner's opinion, Mr. Daniel was malingering at the time of the psychological testing.
Since Mr. Daniel's admission to Bryce State Hospital, he has been under the close observation, evaluation and review of qualified medical, psychiatric, psychological, and other evaluation and treatment staff. The most recent review was on Tuesday, September 1, 1981, and at that time, the Forensic Evaluation and Treatment Board was of the following opinions:
(1) George Daniel is presently competent to stand trial and to assist his attorney in preparing his defense. Mr. Daniel does understand the nature of the charge against him.
(2) George Daniel's alleged criminal conduct is not viewed as the product of mental illness. Therefore, George Daniel was not suffering from such a mental disease, defect, or derangement at the time of the particular act charged which prevented him from possessing the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.
(3) George Daniel was not suffering from a mental illness at the time of the particular act charged which prevented him from distinguishing right from wrong or prevented him from adhering to the right.
Our evaluation being completed, we are requesting that the appropriate order be issued remanding George Daniel to the custody of the Russell County Circuit Court for court proceedings to be resumed.
Details of Mr. Daniel's evaluation are filed in his medical record and will be furnished to the court upon a receipt of an appropriate court order by the custodian of medical records at Bryce State Hospital.
Sincerely,
/s/ Larry L. Ingram Larry L. Ingram Unit Coordinator Forensic Program
/s/ C. Duane Burgess, M.D. Clinical Director for Thomas L. Smith, Jr., M.D. Psychiatrist
LLI/TLM/mrb
cc: Clerk of Circuit Court Russell County Courthouse Phenix City, Alabama 36867 Mr. William J. Benton District Attorney Russell County Courthouse Phenix City, Alabama 36867 Mr. Ruben King Defense Attorney 459 South McDonough Street Montgomery, Alabama 36104
4/1-2 8110